## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## SOUTHERN DIVISION

YVONNE BARNES and PATRICIA
DEAN individually and on behalf of all
others similarly situated,

                Plaintiffs,

   v.

UNILEVER UNITED STATES
INCORPORATED,
                Defendant.

Case No.: _____

**CLASS ACTION COMPLAINT AND
COMPLAINT FOR DAMAGES**

**Jury Trial Demanded**

Plaintiffs Yvonne Barnes and Patricia Dean ("Plaintiffs") bring this Class Action Complaint against Unilever United States, Inc. ("Unilever" or "Defendant"), individually and on behalf of all others similarly situated, and complain and allege upon personal knowledge as to themselves and their own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by their attorneys:

### NATURE OF THE ACTION

1.    This is a civil class action brought by Plaintiffs on behalf of all consumers who purchased Suave 24-hour Protection Powder aerosol antiperspirant ("Suave Antiperspirant" or the "Product") from Defendant for normal, household use. The Product is defective because it contains the chemical benzene, a known carcinogen that offers no therapeutic deodorant or antiperspirant benefit.

2.     Over the course of several decades, Defendant gained the trust of consumers, who reasonably believe that Defendant's products, including the defective Product at issue, are made with quality materials, and can be used safely, as intended.

3.     Defendant formulates, designs, manufactures, markets, advertises, distributes, and sells the Product to consumers throughout the United States, including in the State of Illinois.

4.     Defendant distributes and sells the Product through various authorized retailers in store and online.

5.     Defendant represents that the Product is safe for its intended use. In reality, the Product contains significant concentrations of benzene, a harmful carcinogen.

6.     Benzene is a carcinogen known to cause cancer in humans. Long-term exposure additionally causes harmful effects on the bone marrow, a decrease in red blood cells leading to anemia, and excessive bleeding that can affect the immune system, leading to an increased chance of infection. According to FDA guidance, there is no safe level of benzene, and thus it "should not be employed in the manufacture of drug substances, excipients, and drug products because of [its] unacceptable toxicity." FDA, Q3C – 2017 Tables and List Guidance for Industry, https://www.fda.gov/media/71737/download.

7.     FDA guidance provides that "if [benzene's] use is unavoidable in order to produce a drug product with a significant therapeutic advance, then [its] levels should be restricted" to 2 parts per million ("ppm"). *Id.*

8.     The use of benzene in the Product is demonstrably avoidable. Feasible alternative formulations, designs, and materials were available to Defendant at the time it formulated, designed, and manufactured the Product.  Critically, such alternative formulations and designs were and are used by other manufacturers to produce and sell non-defective spray deodorants and

antiperspirants.  In any event, the Product's benzene concentration is 5.21 ppm, more than two-and-a-half times the FDA concentration limit of 2 ppm.

9.     The Product's benzene contamination was not disclosed to the consumer on the product label, the ingredients list, or otherwise.

10.     Plaintiffs seek damages and equitable remedies for themselves, and for the proposed Classes.

## PARTIES

### A. Plaintiffs

11.     Plaintiff Yvonne Barnes is a resident and citizen of Chicago, Illinois who purchased and used Suave 24-Hour Protection Powder Aerosol antiperspirant within the relevant time period.

12.     Plaintiff Patricia Dean is a resident and citizen of Homewood, Illinois who purchased and used Suave 24-Hour Protection Powder Aerosol antiperspirant within the relevant time period.

### B. Defendant

13.     Defendant Unilever United States, Inc. is part of an international consumer goods company, the Unilever Group, which consists of two parent companies, Unilever NV and Unilever PLC, together with group subsidiaries, and operates as a single economic entity.

14.     Unilever NV is a public limited company registered in the Netherlands, which has listings of shares and depositary receipts for shares on Euronext Amsterdam and of New York Registry Shares on the New York Stock Exchange.

15.     Unilever PLC is a public limited company registered in England and Wales which has shares listed on the London Stock Exchange and, as American Depositary Receipts, on the New York Stock Exchange.

16. The Unilever Group has company headquarters in Rotterdam, Netherlands, London, England, and the United States. The Unilever Group operates in the United States under its subsidiary Unilever United States, Inc., a corporation headquartered and located at 800 Sylvan Avenue, Englewood Cliffs, NJ 07632, incorporated within the State of Delaware with entity number 0842944, and registered with the New Jersey Secretary of State with entity number 0100400419.

## JURISDICTION AND VENUE

17. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 of the Class Action Fairness Act of 2005 because: (1) there are 100 or more putative Class Members, (ii) the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest and costs, and (iii) there is minimal diversity because Plaintiffs and Defendant are citizens of different states. This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

18. This Court has personal jurisdiction over Defendant because it has substantial aggregate contacts with this District, including engaging in conduct in this District that has a direct, substantial, reasonably foreseeable, and intended effect of causing injury to persons throughout the United States, because Defendant placed the Product into the stream of commerce directed at this District, and because Defendant purposely availed itself of the laws of the United States and the State of Illinois.

19. In accordance with 28 U.S.C. § 1391, venue is proper in this District because a substantial part of the conduct giving rise to Plaintiffs' claims occurred in this District, Defendant transacts business in this District, and Defendant has intentionally availed itself of the laws and markets within this District.

**FACTUAL ALLEGATIONS**

**A. Unilever's History in the Industry**

20.     Unilever is a large multinational consumer goods company known for its wide range of personal care and hygiene products, including the antiperspirant Product at issue here.

21.     Unilever owns over 400 brands, and its products are available in 190 countries.

22.     Unilever's products, including its Suave product line, are manufactured, distributed, and sold throughout the United States, including the State of Illinois.

23.     Unilever gained consumers' trust over the last 130 years, and, according to the company, 2.5 billion people use its products each day.[1]

24.     Unilever achieved worldwide sales of €50.7 billion (approximately $61.9 billion) in 2020, 42% of which was from Personal Care products.

25.     Unilever markets and sells aerosol deodorant and antiperspirant as part of its Suave product line. Unilever has sold Suave personal care products for the last 75 years, and, according to Unilever, "the brand has provided high-quality, value products that work as well as premium brands."[2]

26.     Unilever's website emphasizes that "[t]he safety of our products is our top priority. That is why each new product innovation is evaluated systematically and scientifically by our team in the Safety and Environmental Assurance Centre (SEAC). Our scientists consider any safety risks to the consumers who use our products, to the workers who make them, and to the environment to ensure all our products are safe to use."[3]

---

[1] https://www.unilever.com/Images/ir-q4-2020-full-announcement_tcm244-558959_en.pdf (last visited Nov. 10, 2021).

[2] https://www.unileverusa.com/brands/beauty-personal-care/suave/ (last visited Nov. 10, 2021).

[3] https://www.unilever.com/planet-and-society/safety-and-environment/keeping-people-and-the-environment-safe/ (last visited Nov. 10, 2021)

**B.  The Product**

27.     Deodorant is a product applied to the body to prevent or mask the odor of perspiration. Antiperspirants, a subclass of deodorants, prevent sweat glands from producing sweat. The Product is both a deodorant and antiperspirant applied to the body as a spray.

28.     The U.S. Food and Drug Administration ("FDA") classifies and regulates most deodorants, including the Product, as cosmetics.  In addition, the FDA classifies and regulates antiperspirants, including the Product, as a drug.

29.     On November 3, 2021, Valisure, an analytical pharmacy and consumer protection organization, petitioned the FDA to address the dangerous levels of benzene in the Product and other deodorants and antiperspirants based upon rigorous testing the organization had conducted for a number of spray deodorant and antiperspirant products.[4] The next day, Valisure released the results of these tests.[5]

30.     In testing, Valisure found average concentrations of benzene above the FDA concentration limit of 2 ppm in 16 spray deodorants, including the Product which is manufactured and sold by Unilever under its Suave brand.

31.     In particular, Valisure found benzene concentrations of 5.21 ppm in Suave 24 Hour Protection Powder Aerosol, 2.6 times the FDA concentration limit.

**C.  Danger Posed by the Product**

32.     The carcinogenic properties of benzene are well documented, as noted be the Centers for Disease Control and Prevention ("CDC"). See CDC, Facts About Benzene (2018), https://emergency.cdc.gov/agent/benzene/basics/facts.asp.

---

[4] https://www.valisure.com/wp-content/uploads/Valisure-FDA-Citizen-Petition-on-Body-Spray-v4.0-3.pdf (last visited Nov. 9, 2021).
[5] https://www.valisure.com/blog/valisure-news/valisure-detects-benzene-in-body-spray-products-3/ (last visited Nov. 8, 2021).

33.     The U.S. Department of Health and Human Services (DHHS) has determined that benzene causes cancer in humans. Long-term exposure to high levels of benzene can cause leukemia, cancer of the blood-forming organs.

34.     Long-term exposure to benzene additionally causes harmful effects on the bone marrow and can cause a decrease in red blood cells, leading to anemia. It can also cause excessive bleeding and can affect the immune system, increasing the chance for infection.

35.     Due to these significant health risks, the World Health Organization and the International Agency for Research on Cancel classify benzene as a Group 1 compound that is "carcinogenic to humans."[6]

36.     The FDA classifies Benzene as a Class 1 compound.[7] According to FDA guidance: "Solvents in Class 1 should not be employed in the manufacture of drug substances, excipients, and drug products, because of their unacceptable toxicity or their deleterious environmental effect."[8] The FDA concentration limit for benzene is 2 ppm, a fraction of the benzene concentration found in the Product.[9]

### D. Defendant's Representations

37.     Defendant makes a significant number of representations regarding the safety of the Product on its website. Unilever assures consumers that, "[t]o keep people safe, we conduct two types of consumer safety risk assessment: ingredient safety and microbiological safety. Ingredient safety assessments evaluate the potential effects an ingredient in our products could have on the body."[10] Although Suave 24-Hour Protection Powder Aerosol antiperspirant was found to contain benzene concentration that far exceed the FDA limit, Unilever does not list

---

[6] https://www.who.int/water_sanitation_health/dwq/chemicals/benzenesum.pdf (last visited Nov. 7, 2021).

[7] https://www.fda.gov/media/71737/download (last visited Nov. 7, 2021).

[8] *Id.*

[9] *Id.*

[10] https://www.unilever.com/planet-and-society/safety-and-environment/keeping-people-and-the-environment-safe/ (last visited Nov. 10, 2021).

benzene among the active or inactive ingredients anywhere on its website,[11] and nothing on the

Product label otherwise insinuates, states, or warns that the Product contains benzene:

## Drug Facts

**Active ingredient**            **Purpose**
Aluminum Chlorohydrate (19.1%)................................anti-perspirant

**Uses**
• reduces underarm wetness
• 24 hour protection

**Warnings**
• FLAMMABLE UNTIL FULLY DRY. DO NOT USE NEAR HEAT, FLAME OR WHILE SMOKING. CAN CAUSE SERIOUS INJURY OR DEATH.
• Keep away from face and mouth to avoid breathing in.
• Avoid spraying in eyes. Contents under pressure. Do not puncture or incinerate. Do not expose to heat or store at temperatures above 120°F/50°C or in enclosed places that could overheat.
• Do not use on broken skin. Stop use if rash or irritation occurs.
• Ask a doctor before using if you have kidney disease.
• KEEP OUT OF REACH OF CHILDREN.
• USE ONLY AS DIRECTED. INTENTIONAL MISUSE BY DELIBERATELY CONCENTRATING AND INHALING THE CONTENTS CAN BE HARMFUL OR FATAL. Help stop inhalation abuse. For information visit www.inhalant.org

**Directions** apply to underarms only

**Inactive ingredients**
Butane, Cyclopentasiloxane, Hydrofluorocarbon 152a, Isopropyl Palmitate, Talc, Disteardimonium Hectorite, Isobutane, Fragrance (Parfum), Propylene Carbonate, Propane

**Questions or comments?**
Call us at 1-800-782-8301

[12]

### E. Defendant's Product is Adulterated and Illegal to Sell

38.  Defendant's antiperspirant Product is a drug which is adulterated under 21 U.S.C.

§ 351(a)(1) based upon the presence of benzene.

---

[11] https://smartlabel.pg.com/00037000711087.html (last visited Nov. 10, 2021)

[12] https://www.walmart.com/ip/Suave-24-Hour-Protection-Anti-Perspirant-Deodorant-Spray-Powder-4-oz-Pack-of-3/902544007 (last visited Nov. 17, 2021)

39.     The Federal Food, Drug, and Cosmetic Act ("FDCA") prohibits "[t]he introduction or delivery for introduction into interstate commerce of any food, drug, or cosmetic that is adulterated or misbranded." 21 U.S.C. § 331(a).

40.     The Illinois Food, Drug and Cosmetic Act ("IL FDCA") has expressly adopted the federal labeling requirements as its own. The definition of "adulterated" as defined by 410 ILCS 620/14 is exactly the same as the FD&C Act.

41.     As alleged herein, Defendant has violated the FDCA, the IL FDCA, the Illinois Consumer Fraud and Deceptive Trade Practices Act ("ICFA"), other parallel state statutes, and consumer protection statutes.

42.     Defendant engaged in fraudulent, unfair, deceptive, misleading, and/or unlawful conduct stemming from its omissions surrounding benzene contamination affecting the Product.

43.     No reasonable consumer, including Plaintiffs, would have purchased the Product had they known of the material omissions of material facts regarding the presence of benzene. Accordingly, Plaintiffs and the Classes suffered injury in fact and lost money as a result of Defendant's misleading representations and omissions and did not receive the benefit-of-the-bargain.

44.     Plaintiffs and the Classes' injury is underscored by the fact that numerous other products offering the same therapeutic benefit at comparable prices exist that are not contaminated with benzene.

45.     Plaintiffs and the Classes may be harmed again because they want to purchase the Product in the future; however, without injunctive relief Plaintiffs would not be able to know or trust that Defendant will truthfully and legally label the Product and would be likely be misled again.

## PLAINTIFFS' FACTUAL ALLEGATIONS

**PLAINTIFF YVONNE BARNES**

46.     Plaintiff Yvonne Barnes has purchased Suave 24-Hour Protection Powder Aerosol antiperspirant regularly for several years, approximately every 2 to 3 weeks.  The last time Plaintiff Barnes purchased the Product was in or around the end of October 2021.  Plaintiff Barnes purchases the Product at Walmart, Target, CVS, and Walgreens located in Chicago, Illinois and Oak Park, Illinois.

47.     Nowhere on the packaging did Defendant disclose that the Product contains benzene at the time of purchase.

48.     If Plaintiff Barnes had been aware of the existence of benzene in the Product, she would not have purchased the Product or would have paid significantly less.

49.     As a result of Defendant's actions, Plaintiff Barnes has incurred damages, including economic damages.

**PLAINTIFF PATRICIA DEAN**

50.     Plaintiff Patricia Dean has purchased Suave 24-Hour Protection Powder antiperspirant regularly for the last 5 years, approximately 3 to 4 times each year.  Plaintiff Dean most recently purchased the Product in or around May or June 2021.  Each time Plaintiff Dean purchased the Product, she did so at the Walmart in Homewood, Illinois.

51.     Nowhere on the packaging did Defendant disclose that the Product contains benzene at the time of purchase.

52.     If Plaintiff Dean had been aware of the existence of benzene in the Product, she would not have purchased the Product or would have paid significantly less.

53.     As a result of Defendant's actions, Plaintiff Dean has incurred damages, including economic damages.

## CLASS ACTION ALLEGATIONS

54.     Plaintiffs bring this action individually and as representatives of all those similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of the below-defined Classes:

55.     **National Class:** All persons in the United States who purchased the Product any time from three years before the filing of this Complaint to the date of judgment.

**Illinois Subclass:** All persons in the State of Illinois who purchased the Product any time from three years before the filing of this Complaint to the date of judgment.

56.     Members of the classes described are referred to as "Class Members" or members of the "Classes."

57.     The following are excluded from the Classes: (1) any Judge presiding over this action and members of his or her family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parent has a controlling interest (as well as current or former employees, officers, and directors); (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiffs' counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

58.     Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

59.     **Numerosity – Federal Rule of Civil Procedure 23(a)(1).** The members of the Classes are so numerous that individual joinder of all Class Members is impracticable. On information and belief, Class Members number in the thousands to millions. The precise number or identification of members of the Classes are presently unknown to Plaintiffs but may be

ascertained from Defendant's books and records. Class Members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

60.    **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** Common questions of law and fact exist as to all members of the Classes, which predominate over any questions affecting individual members of the Classes. These common questions of law or fact include, but are not limited to, the following:

    a)  Whether the Product contains benzene at the time of purchase;

    b)  Whether Defendant omitted or failed to disclose material information to Plaintiffs and Class Members regarding the Product;

    c)  Whether the Product is defectively designed, formulated, and/or manufactured;

    d)  Whether Defendant knew or reasonably should have known about the harmful level of benzene in the Product prior to distributing and selling them to Plaintiffs and Class Members;

    e)  Whether the marketing, advertising, packaging, labeling, and other promotional materials for the Product is deceptive;

    f)  Whether Defendant's actions violate the consumer protection statutes invoked herein;

    g)  Whether Defendant breached the implied warranty of merchantability relating to the Product;

    h)  Whether Defendant breached an express warranty to Plaintiffs and Class Members;

    i)  Whether Defendant was unjustly enriched at the expense of the Plaintiffs and Class Members;

    j)  Whether Plaintiffs and Class Members are entitled to damages, including compensatory, exemplary, and statutory damages, and the amount of such damages;

    k)  Whether Plaintiffs and the other Class Members have been injured and the proper measure of their losses as a result of those injuries; and

    l)  Whether Plaintiffs and the Class Members are entitled to injunctive, declaratory, or other equitable relief.

61.     Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiffs, on behalf of themselves and the other Class Members. Similar or identical statutory and common law violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action.

62.     **Typicality – Federal Rule of Civil Procedure 23(a)(3).** Plaintiffs' claims are typical of the claims of the other Class Members because, among other things, all such claims arise out of the same wrongful course of conduct engaged in by Defendant in violation of law as complained of herein. Further, the damages of each Class Member were caused directly by Defendant's wrongful conduct in violation of the law as alleged herein.

63.     **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).** Plaintiffs are adequate representatives of the Classes because they are members of the Classes and their interests do not conflict with the interests of the Class Members they seek to represent. Plaintiffs have also retained counsel competent and experienced in complex commercial and class action litigation. Plaintiffs and their counsel intend to prosecute this action vigorously for the benefit of all Class Members. Accordingly, the interests of the Class Members will be fairly and adequately protected by Plaintiffs and their counsel.

64.     **Superiority – Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and the Class Members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for Class Members to individually seek redress for Defendant's wrongful conduct. Even if Class Members could afford individual

litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

**COUNT I**
**Violation Of Illinois Consumer Fraud and Deceptive Trade Practices Act ("ICFA")**
**815 ILCS 505/1, *et seq.***
**(On Behalf of Plaintiff Yvonne Barnes, Plaintiff Patricia Dean, and The Illinois Subclass)**
**Vio**

65.     Plaintiffs Barnes and Dean repeat and re-allege the allegations above as if set forth herein.

66.     Plaintiffs and other Class Members are persons within the context of the ICFA, 815 ILCS 505/1(c).

67.     Defendant is a person within the context of the ICFA, 815 ILCS 505/1(c).

68.     At all times relevant hereto, Defendant was engaged in trade or commerce as defined under the ICFA, 815 ILCS 505/1(f). 183.

69.     Plaintiffs Barnes and Dean and the proposed Class are "consumers" who purchased the Product for personal, family or household use within the meaning of the ICFA, 815 ILCS 505/1(e).

70.     The ICFA prohibits engaging in any "unfair or deceptive acts or practices … in the conduct of any trade or commerce…." ICFA, 815 ILCS 505/2.

71.     The ICFA prohibits any deceptive, unlawful, unfair, or fraudulent business acts or practices including using deception, fraud, false pretenses, false promises, false advertising, misrepresentation, or the concealment, suppression, or omission of any material fact, or the use or employment of any practice described in Section 2 of the Uniform Deceptive Trade Practices Act ("UDTPA"). 815 ILCS § 505/2. Plaintiffs Barnes and Dean and the other Illinois Subclass

14

Members reasonably relied upon Defendant's representation that the Product was safe for personal use and, due to Defendant's omission, Plaintiffs relied on Defendant's labeling to conclude that the Product was not contaminated with any dangerous substance, including benzene.

72.     Defendant's conduct, as described herein, took place within the State of Illinois and constitute unfair or deceptive acts or practices in the course of trade and commerce, in violation of 815 ICFA 505/1, et seq.

73.     Defendant violated the ICFA by representing that the Product has characteristics or benefits that it does not have. 815 ILCS § 505/2; 815 ILCS § 510/2(7).

74.     Defendant advertised the Product with intent not to sell it as advertised, in violation of 815 ILCS § 505/2 and 815 ILCS § 510/2(9).

75.     Defendant engaged in fraudulent and/or deceptive conduct which creates a likelihood of confusion or of misunderstanding in violation of 815 ILCS § 505/2; 815 ILCS § 510/2(3).

76.     Defendant engaged in misleading and deceptive advertising that represented that the Product was safe. Defendant chose to label the Product in this way to impact consumer choices and gain market dominance, as it is aware that all consumers who purchased the Product were exposed to and would be impacted by its omission and would reasonably believe that the Product was safe for personal use and did not contain any dangerous contaminants, including benzene. However, the Product is not safe, as it is contaminated with the carcinogen benzene.

77.     Defendant intended that Plaintiffs Barnes and Dean and each of the other Illinois Subclass Members would reasonably rely upon the misrepresentations, misleading characterizations, warranties and material omissions concerning the true nature of the Product.

78.     Defendant's misrepresentations, concealment, omissions and other deceptive conduct were likely to deceive and cause misunderstanding and/or in fact caused Plaintiffs Barnes

and Dean and each of the other Illinois Subclass Members to be deceived about the true nature of the Product.

79.     Plaintiffs Barnes and Dean and Class Members have been damaged as a proximate result of Defendant's violations of the ICFA and have suffered damages as a direct and proximate result of purchasing the Product.

80.     As a direct and proximate result of Defendant's violations of the ICFA, as set forth above, Plaintiffs Barnes and Dean and the Illinois Subclass Members have suffered ascertainable loss of money caused by Defendant's misrepresentations.

81.     Had they been aware of the true nature of the Product, Plaintiffs and Class Members either would have paid less for the Product or would not have purchased it at all.

82.     Plaintiffs Barnes and Dean and the Illinois Subclass Members are therefore entitled to relief, including restitution, actual damages, treble damages, punitive damages, costs and attorney's fees, under sections 815 ILCS 505/10a of the ICFA. Plaintiffs and Class Members are also entitled to injunctive relief, seeking an order enjoining Defendant's unfair and/or deceptive acts or practices.

**COUNT II**
**Breach of Express Warranty**
**(On Behalf of the National Class and,**
**alternatively, the Illinois Subclass)**

83.     Plaintiffs repeat and re-allege the allegations above as if set forth herein.

84.     Plaintiffs and each member of the Class formed a contract with Defendant at the time Plaintiffs and each member of the Class purchased the Product.

85.     The terms of the contract include the promises and affirmations of fact made by Defendant on the Product's packaging and through marketing and advertising, as described above.

86.     This labeling, marketing, and advertising constitute express warranties and became part of the basis of the bargain and are part of the standardized contract between Plaintiffs and the members of the Class and Defendant.

87.     As set forth above, Defendant purports through its advertising, labeling, marketing, and packaging, to create an express warranty that the Product is safe for its intended use.

88.     Plaintiffs and the members of the Class performed all conditions precedent to Defendant's liability under this contract when they purchased the Product.

89.     Defendant breached express warranties about the Product and its qualities because Defendant's Product contained the harmful chemical benzene at the time of purchase and the Product did not conform to Defendant's affirmations and promises described above.

90.     Plaintiffs and each of the members of the Class would not have purchased the Product had they known the true nature of the harmful chemicals in the Product.

91.     As a result of Defendant's breach of warranty, Plaintiffs and each Class Member suffered and continue to suffer financial damage and injury, and are entitled to all damages, in addition to costs, interest and fees, including attorneys' fees, as allowed by law.

**COUNT III**
**Breach of Implied Warranty**
**(On Behalf of the National Class and,**
**alternatively, the Illinois Subclass)**

92.     Plaintiffs repeat and re-allege the allegations above as if set forth herein.

93.     Unilever is a merchant and was at all relevant times involved in the manufacturing, distributing, warranting, and/or selling of the Product.

94.     The Product is considered a "good" under the relevant laws and Unilever knew or had reason to know of the specific use for which the Product, as a good, was purchased.

95.     Unilever entered into agreements with retailers to sell its Product to be used by Plaintiffs and Class Members for personal use.

96. The implied warranty of merchantability included with the sale of each Product means that Unilever guaranteed that the Product would be fit for the ordinary purposes for which antiperspirants are used and sold, and were not otherwise injurious to consumers. The implied warranty of merchantability is part of the basis for the benefit of the bargain between Unilever, and Plaintiffs and Class Members.

97. Unilever breached the implied warranty of merchantability because the Product is not fit for its ordinary purpose of providing reasonably reliable and safe use for preventing or masking body odor because the Product contains benzene, a known and dangerous carcinogen. Therefore, the Product is not fit for its particular purpose of safely preventing or masking body odor.

98. Unilever's warranty expressly applies to the purchaser of the Product, creating privity between Unilever and Plaintiffs and Class Members.

99. Privity is nonetheless not required because Plaintiffs and Class Members are the intended beneficiaries of Unilever's warranties and its sale through retailers. Unilever's retailers were not intended to be the ultimate consumers of the Product and have no rights under the warranty agreements. Unilever's warranties were designed for and intended to benefit the consumer only, including Plaintiffs and Class Members.

100. Unilever has been provided sufficient notice of its breaches of implied warranties associated with the Product. Unilever was put on constructive notice of its breach through its review of consumer complaints and other reports, including the Valisure testing report described herein, and upon information and belief through its own product testing.

101. Had Plaintiffs, Class Members, and the consuming public known that the Product was contaminated with benzene, they would not have purchased the Product or would have paid less for it.

102.    As a direct and proximate result of the foregoing, Plaintiffs and Class Members suffered and continue to suffer financial damage and injury, and are entitled to all damages, in addition to costs, interest and fees, including attorneys' fees, as allowed by law.

**COUNT IV**
**Unjust Enrichment**
**(In the Alternative and on Behalf of the National Class**
**and, alternatively, the Illinois Subclass)**

103.    Plaintiffs repeat and re-allege the allegations above as if set forth herein.

104.    Plaintiffs and the other members of the Class conferred benefits on Defendant by purchasing the Product.

105.    Defendant has been unjustly enriched in retaining the revenues derived from the purchase of the Product by Plaintiffs and the other members of the Class.

106.    Retention of those monies under these circumstances is unjust and inequitable because Defendant's labeling of the Product was misleading to consumers, which caused injuries to Plaintiffs and the other members of the Class because they would have not purchased the Product if Defendant had disclosed that the Product contained harmful chemicals.

107.    Because Defendant's retention of the non-gratuitous benefits conferred on them by Plaintiffs and the other members of the Class is unjust and inequitable, Defendant must pay restitution to Plaintiffs and the other members of the Class for their unjust enrichment, as ordered by the Court.

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of the Class Members, pray for judgment and relief against Defendant as follows:

a)   For an order declaring: (i) this is a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the proposed Classes described herein; and (ii) appointing Plaintiffs to serve as representatives for the Classes and Plaintiffs' counsel to serve as Class Counsel;

b) For an order enjoining Defendant from continuing to engage in the unlawful conduct set forth herein;

c) For an order awarding restitution of the monies Defendant wrongfully acquired by its illegal and deceptive conduct;

d) For an order requiring disgorgement of the monies Defendant wrongfully acquired by its illegal and deceptive conduct;

e) For compensatory and punitive damages, including actual and statutory damages, arising from Defendant's wrongful conduct and illegal conduct;

f) For an award of reasonable attorneys' fees and costs and expenses incurred in the course of prosecuting this action; and

g) For such other and further relief as the Court deems just and proper.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of all claims in this Complaint so triable.

Dated: November 18, 2021                    Respectfully submitted,


**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**

*/s/* Virginia Ann Whitener
Virginia Ann Whitener (6337452)
*gwhitener@milberg.com*
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Tel.:    (865) 247-0080
Fax:    (865) 522-0049

Nick Suciu III*
*nsuciu@milberg.com*
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
6905 Telegraph Rd., Suite 115
Bloomfield Hills, MI 48301
Tel.:    (313) 303-3472
Fax:    (865) 522-0049

Jennifer Czeisler**
Russell Busch***
jczeisler@milberg.com
rbusch@milberg.com
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Tel.:    (865) 247-0080
Fax:    (865) 522-0049

*Admitted to the General Bar
**Pro Hac Vice Application Forthcoming
***Admission Pending

***Attorneys for Plaintiffs***