**EXHIBIT 1**

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("Agreement") is entered into between Yvonne Barnes, Patricia Dean, Antonio Morris, and Bernadette Bogdanovs, individually and on behalf of the putative class (collectively, "Plaintiffs" or "Class Representatives"), and Unilever United States, Inc. ("Unilever") (collectively, the "Parties").

1.      **RECITALS**

1.1.    Unilever has marketed and sold aerosol antiperspirant products under the Suave brand.

1.2.    On November 18, 2021, Plaintiffs, Yvonne Barnes and Patricia Dean, commenced a putative class action in the United States District Court for the Northern District of Illinois, alleging that certain Suave antiperspirant products sold in the United States contained harmful levels of benzene, and seeking compensation for alleged economic losses allegedly sustained by U.S. consumer purchasers of the products, as well as injunctive relief. *See Barnes et al. v. Unilever United States, Inc.*, Case No. 1:21-cv-06191 (N.D. Ill.) ("*Barnes*").

1.3.    On January 20, 2022, Plaintiff Antonio Morris filed a similar class action complaint in the United States District Court for the Northern District of Illinois. *See Morris v. Unilever United States, Inc.*, Case No. 1:22-cv-00338 (N.D. Ill.) ("*Morris*").

1.4.    On March 4, 2022, Plaintiffs Yvonne Barnes and Patricia Dean filed an unopposed motion to consolidate *Morris* with *Barnes*, pursuant to Federal Rule of Civil Procedure 42(a), which the Court granted.

1.5.    On April 14, 2022, Plaintiff Bernadette Bogdanovs filed a similar class action complaint in the United States District Court for the Central District of California. *See Bogdanovs v. Unilever United States, Inc.*, Case No. 5:22-cv-00652 (C.D. Cal.) ("*Bogdanovs*").

1.6.    On June 14, 2022, *Bogdanovs* was transferred to the Northern District of Illinois.

1.7.    On June 27, 2022, Unilever filed an unopposed motion to consolidate *Bogdanovs* with *Barnes-Morris*, which the Court granted.

1.8.    On August 24, 2022, Plaintiffs in the consolidated *Barnes-Morris-Bogdanovs* case (the "Action") filed a First Amended Consolidated Class Action Complaint.

1.9.    Unilever denies Plaintiffs' allegations and all charges of wrongdoing or liability arising out of the conduct, statements, acts, or omissions alleged in the Action.

1.10.   On March 11, 2023, Judge Matthew F. Kennelly granted in part and denied in part Unilever's motion to dismiss the First Amended Consolidated Class Action Complaint. ECF No. 89.

1.11.   On October 30, 2023, the Parties engaged in a mediation with the Honorable Beverly Hodgson (Ret.), and, following further negotiations over the next few weeks, reached an agreement in principle to settle Plaintiffs' claims.

1.12.   The Parties, by this Agreement, intend to fully, finally, and forever compromise, settle, release, and resolve the Action, subject to Court approval.

NOW, THEREFORE, the Parties, for good and valuable consideration, the sufficiency of which is hereby acknowledged, agree to the following terms and conditions:

**2.      DEFINITIONS**

Capitalized terms in this Agreement shall be defined as follows:

2.1.    "Action" means the consolidated lawsuit captioned *Barnes v. Unilever United States Incorporated*, Case No. 1:21-cv-06191 (N.D. Ill.).

2.2.    "Agreement" means this Settlement Agreement and Release, including all exhibits hereto.

2.3.    "Attorneys' Fees and Costs" means such funds as may be awarded by the Court consistent with the terms of this Agreement to Plaintiffs' Counsel for their past, present, and future work, efforts, and expenditures in connection with this Action and settlement, including fees, costs, and expenses of any co-counsel, local counsel, experts, consultants, or other individuals retained by, or who assisted Plaintiffs' Counsel in connection with this Action and settlement, as described more particularly in Section 5 of this Agreement.

2.4.    "Available Settlement Funds" means the Settlement Fund net of notice and administration costs, Service Awards, and Attorneys' Fees and Costs.

2.5.    "Claims Administrator" means, subject to Court approval, a claims administrator to be selected by Plaintiffs' Counsel and acceptable to Unilever.

2.6.    "Claim Filing Deadline" means sixty (60) days prior to the initially scheduled hearing date on Final Approval.

2.7.    "Claim Form" means a form in substantially the same form as Exhibit A hereto.

2.8.    "Claim Period" means the period beginning on the Notice Date and continuing until the Claim Filing Deadline.

2.9.    "Class Period" means January 1, 2018, to the date of Preliminary Approval, inclusive.

2.10.    "Class Representatives" or "Plaintiffs" means Yvonne Barnes, Patricia Dean, Antonio Morris, and Bernadette Bogdanovs.

2.11.    "Complaint" is the First Amended Consolidated Class Action Complaint, which is publicly available at ECF No. 60 on the docket in *Barnes v. Unilever United States Incorporated*, Case No. 1:21-cv-06191 (N.D. Ill).

2.12.    "Covered Products" means Suave 24-Hour Protection Powder Aerosol Antiperspirant and Suave 24-Hour Protection Fresh Aerosol Antiperspirant.

2.13.    "Court" means the United States District Court for the Northern District of Illinois.

2.14.    "Effective Date" means the later of: (i) the expiration of the time to appeal the Final Approval with no appeal having been filed; or (ii) if such appeal is filed, the termination of such appeal, on terms that affirm the Final Approval or dismiss the appeal with no material modification to the Final Approval.

2.15.    "Excluded Persons" are (1) the judge presiding over this matter and members of his or her immediate family; (2) Unilever; (3) any entity in which Unilever has a controlling interest; (4) any of Unilever's subsidiaries, parents, affiliates, and officers, directors, employees, legal representatives, heirs, successors, or assigns; and (5) any persons who timely exclude themselves from the Settlement Class.

2.16.    "Exclusion Deadline" means sixty (60) days prior to the initially scheduled hearing date on Final Approval.

2.17.    "Final Approval" means issuance of an order granting final approval of this Agreement as binding upon the Parties; holding this Agreement to be final, fair, reasonable, adequate, and binding on all Settlement Class Members who are not Excluded Persons as provided below; ordering that the settlement relief be provided as set forth in this Agreement; ordering the releases as set forth in Section 7 of this Agreement; entering judgment in this case; and retaining continuing jurisdiction over the interpretation, implementation, and enforcement of the Agreement.

2.18.    "Household" means a single dwelling unit, no matter the number of natural persons residing therein.

4

2.19.   "Long Form Notice" means the Court-approved form of notice to Settlement Class Members in substantially the same form as Exhibit B1.

2.20.   "Notice Date" means thirty (30) days after the date of Preliminary Approval.

2.21.   "Notice Plan" means the procedure for providing notice to the class, as set forth in Exhibit B, and which shall be calculated to achieve no less than 70% reach.

2.22.   "Objection Deadline" means sixty (60) days prior to the initially scheduled hearing date on Final Approval.

2.23.   "Online Advertisement" means the Court-approved advertisement to Settlement Class Members in substantially the same form as Exhibit B3.

2.24.   "Parties" means Plaintiffs and Unilever, collectively.

2.25.   "Party" means any one of Plaintiffs or Unilever.

2.26.   "Person(s)" means any natural person or business entity.

2.27.   "Plaintiffs' Counsel" means the law firms of Levin, Sedran & Berman LLP, Shub & Johns LLC, Bursor & Fisher, P.A., Milberg Coleman Bryson Phillips Grossman, PLLC, and The Sultzer Law Group.

2.28.   "Preliminary Approval" means issuance of an order, substantially in the form of Exhibit C, granting preliminary approval to this Agreement as within the range of possible Final Approval; approving notice to the Settlement Class Members as described in Section 6 below; and setting a hearing to consider Final Approval of the settlement and any objections thereto.

2.29.   "Proof of Purchase" means an itemized retail sales receipt, retail store club or loyalty card record, or other document showing, at a minimum, the purchase of a Covered Product, the purchase price, and the date and place of the purchase.

2.30. "Recall Reimbursement Program" means the program offered by Unilever to provide refunds in connection with its voluntary recall of the Covered Products.

2.31. "Released Claims" means the claims released as set forth in Section 7 of this Agreement.

2.32. "Released Parties" means Unilever and each and all of its respective predecessors and successors in interest, former, present and future direct and indirect affiliates, subsidiaries, divisions, parents, owners, and affiliates, and each and all of its respective present and former officers, directors, managers, shareholders, members, partners, employees, agents, representatives, suppliers, contracted manufacturers, resellers, retailers, wholesalers, distributors, customers, insurers, assigns, servants, attorneys, assignees, heirs, and executors, whether specifically named and whether or not participating in the settlement by payment or otherwise.

2.33. "Service Award" means any award sought by application to and approval by the Court that is payable to the Class Representatives to compensate them for their efforts in bringing this Action and achieving the benefits of this settlement on behalf of the Settlement Class.

2.34. "Settlement Benefits" means the benefits provided to Settlement Class Members who submit Valid Claims as set forth in this Agreement.

2.35. "Settlement Class" or "Settlement Class Members" means all natural persons who, between January 1, 2018, and the date of Preliminary Approval, purchased in the United States any Covered Product for personal, family or household use, and not resale.

2.36. "Settlement Fund" means a total payment by Unilever of $2,000,000.00, inclusive of, but not limited to, all payments to Plaintiffs and members of the Settlement Class, Incentive Awards, costs for notice and administration, and court-awarded Attorneys' Fees and Costs.

2.37. "Settlement Website" means an internet website created and maintained by the Claim Administrator. The URL of the Settlement Website shall be provided in the Notice Plan.

2.38. "Short Form Notice" means the Court-approved forms of notice to Settlement Class Members in substantially the same form as Exhibit B2.

2.39. "Termination Date" means the date that the Agreement is terminated as set forth in this Agreement.

2.40. "Valid Claim" means a claim submitted in compliance with this Agreement and determined to be valid by the Claims Administrator, and as further described in Section 3 of this Agreement.

3.     **SETTLEMENT BENEFITS AND CLAIMS ADMINISTRATION**

3.1.    <u>Settlement Fund</u>. The Claims Administrator shall establish an account for the Settlement Fund, which will be used to provide benefits to or on behalf of the Settlement Class. Unilever will contribute two million dollars ($2,000,000.00) in cash to the Settlement Fund for payment of the following: (i) Valid Claim Forms for cash benefits submitted by Settlement Class Members pursuant to paragraph 3.7 below; (ii) the notice and other administrative costs actually incurred by the Claims Administrator, as described in paragraph 3.3.1 below; (iii) Attorneys' Fees and Costs, as may be ordered by the Court and as described in paragraph 5.1 below, and (iv) any Incentive Award to the Class Representatives, not to exceed $1,500 per Class Representative, as may be ordered by the Court and as described in paragraph 5.2 below.

3.2.    <u>Unilever Financial Obligation</u>. Under no circumstances will Unilever's total financial commitment and obligation under this Agreement exceed two million dollars ($2,000,000.00).

3.3.    <u>Unilever Payment Schedule</u>. Unilever shall make payments into the Settlement Fund in accordance with the following schedule:

3.3.1.    <u>Notice and Other Administrative Costs</u>. Fifteen (15) days after Preliminary Approval, Unilever shall advance a notice deposit amount of ninety-seven thousand five hundred fifty dollars ($97,550.00) to the Claims Administrator to cover setting up the Settlement Website, the Toll-free phone number, and the Notice Plan.  All other amounts equal to the cost of publishing the Notice Plan and other administrative costs (as incurred), shall be paid within ninety (90) days of when such amounts are invoiced to Unilever along with wire instructions and other required documentation and become due and owing.

3.3.2.    <u>Attorneys' Fees and Costs and Service Awards</u>. An amount equal to the Attorneys' Fees and Costs and Service Awards, which shall be remitted to the Claims Administrator within five (5) business days of the Effective Date.

3.3.3.    <u>Available Settlement Funds</u>. An amount equal to the Available Settlement Funds, which shall be remitted to the Claims Administrator within ten (10) business days of the Effective Date.

3.4.    <u>Payment of Valid Claims</u>. In consideration for the complete and final settlement of the Action, the Released Claims, and other promises and covenants set forth in this Agreement, and subject to the other terms and conditions thereof, Settlement Class Members shall be paid the monetary relief from the Available Settlement Funds as set forth below:

3.4.1.    <u>Proof of Purchase</u>. Settlement Class Members who timely submit a Valid Claim with Proof of Purchase shall receive the purchase price for each Covered Product listed on the Proof of Purchase, inclusive of all taxes.

3.4.2.   No Proof of Purchase. Settlement Class Members who submit a Valid Claim without Proof of Purchase shall receive the average retail price—$3.29—for up to three (3) Covered Products claimed per household.

3.4.3.   Reduction for Recall Reimbursement Program. Each Settlement Class Member's payment shall be decreased by the amount of cash or voucher payments that member has received or will receive for claims made in the Recall Reimbursement Program (provided that the payment shall not be reduced below $0.00). Unilever shall provide a list to the Claims Administrator of all Settlement Class Members who received compensation through the Recall Reimbursement Program no later than ten (10) business days after the Effective Date.

3.4.4.   *Pro Rata* Adjustment. Each Settlement Class Member's payment shall be increased or decreased on a *pro rata* basis, as necessary, such that the total amount paid to all Settlement Class Members equals the Available Settlement Funds. Pro ration of amounts due to Settlement Class Members from the Settlement Fund will be determined by the Settlement Administrator 30 days after the entry of the final order and judgment. *Pro rata* payments to Settlement Class Members from the Settlement Fund shall be made within 60 days of entry of the final order and judgment.

3.5.   Compliance with Claims Procedures. Subject to the rights and limitations set forth in this Agreement, every Settlement Class Member who is not an Excluded Person shall have the right to submit a claim for Settlement Benefits. A claim shall be a Valid Claim only if submitted on the Claim Form pursuant to, and in compliance with, the procedures set forth herein. Submission of a claim, regardless of whether it is determined to be a Valid Claim, shall confer no

rights or obligations on any Party, any Settlement Class Member, or any other Person, except as expressly provided herein.

3.6.  <u>Claim Form Submission</u>. At the election of the Settlement Class Member, Claim Forms may be submitted on paper via first class mail or online through the Settlement Website. Claim Forms must be postmarked or submitted online no later than the Claim Filing Deadline. Claim Forms postmarked or submitted online after that date will not be Valid Claims. The Claims Administrator may track Claim Forms with unique security identifiers or control numbers. For Claim Forms that are submitted online, the Settlement Class Member shall have the opportunity to upload Proof of Purchase image files (e.g., .jpg, .tif, .pdf) prior to submitting the claim, and to print a page immediately after the Claim Form has been submitted showing the information entered, the names of image files uploaded, and the date and time the Claim Form was submitted.

3.7.  <u>Claim Form Requirements</u>. On the Claim Form, the Settlement Class Member, or a Person with authority to sign and bind the Settlement Class Member, must provide and certify the truth and accuracy of the following information under penalty of perjury, including by signing the Claim Form physically or by e-signature, or the claim will not be considered a Valid Claim by the Claims Administrator:

- The Settlement Class Member's name and mailing address;
- The Settlement Class Member's e-mail address (unless the Settlement Class Member requests a claim form by mail, in which case an e-mail address is optional);
- The Covered Products purchased during the Class Period;
- The number of each Covered Product purchased during the Class Period and the approximate dates of purchase; and

- That the claimed purchases were made for personal, family or household use, and not resale.

3.8.    <u>Claims Administrator Duties</u>. The Claims Administrator shall be responsible for, among other things, providing notice as set forth in the Notice Plan, processing Claim Forms and administering the Settlement Website and Toll-free phone number, exclusion process, and Settlement Benefits claims process described herein (including receiving and maintaining on behalf of the Court and the Parties any Settlement Class Member correspondence regarding requests for exclusion from the Settlement Class). The Claims Administrator will use adequate and customary procedures and standards to prevent the payment of fraudulent claims and to pay only Valid Claims. The Claims Administrator and Parties shall have the right to audit claims, and the Claims Administrator may request additional information from Settlement Class Members. If any fraud is detected or reasonably suspected, the Claims Administrator and Parties can require further information from the Settlement Class Member (including by cross-examination) or deny claims, subject to the supervision of the Parties and ultimate oversight by the Court.

3.9.    <u>Claims Processing/Audits</u>. The Claims Administrator shall approve or deny all claims, and its decision shall be final and binding, except that Plaintiffs' Counsel and Unilever shall have the right to audit claims and to challenge the Claims Administrator's decision by motion to the Court. Plaintiffs' Counsel's or Unilever's choice not to audit the validity of any one or more Claim Forms shall not constitute or be construed as a waiver or relinquishment of any audit or other rights as to any other Claim Forms, individually or as a group, and similarly shall not be construed as a waiver or relinquishment by the Party as to any of its audit and other rights under this Agreement.

3.10. <u>No Liability for Claim Determinations</u>. No Person shall have any claim against Plaintiffs, Unilever, Plaintiffs' Counsel, Unilever's counsel or the Claims Administrator based on any determination of a Valid Claim, distributions, or awards made in accordance with this Agreement and the Exhibits hereto. Neither Plaintiffs nor Unilever, nor their counsel, shall have any liability whatsoever for any act or omission of the Claims Administrator.

3.11. <u>Notification of Claim Denial</u>. Within thirty (30) days after the Claim Filing Deadline, the Claims Administrator shall notify by e-mail and/or regular mail (if no email address is provided on the Claim Form) all Settlement Class Members whose claims are denied of the reason(s) for the denial, using the e-mail address (if any) provided by the Settlement Class Member on the Claim Form.

3.12. <u>Claim Payment Methods</u>. Valid Claims shall be paid by electronic deposit (through Venmo or Zelle), or pre-paid MasterCard, at the Settlement Class Member's option—with paper checks available upon request. Payments shall be made to Settlement Class Members within forty-five (45) days after the Effective Date.

3.13. <u>Uncashed Checks</u>. All settlement checks shall be void and no longer negotiable one hundred twenty (120) days after the date the check was issued. If a settlement check is not negotiated, the Settlement Class Member shall not be entitled to any further payment under this Agreement. If the check is returned as undeliverable, the Claims Administrator shall send an e-mail to the Settlement Class Member, if an e-mail address was provided with the claim, to attempt to obtain a better address, and if obtained, shall mail the check to the new address. The return or failure to cash checks shall have no effect on a Settlement Class Member's release of claims, obligations, representations, or warranties as provided herein, which shall remain in full effect.

Upon court approval, any remaining funds from uncashed checks shall be awarded *cy pres* to a 501(c)(3) not-for-profit entity mutually agreeable to the Parties.

3.14.    No Tax Deductions or Representations Regarding Tax Implications. No deductions for taxes will be taken from any Settlement Benefit at the time of distribution. Settlement Class Members are responsible for paying all taxes due on such Settlement Benefits. All Settlement Benefit payments shall be deemed to be paid solely in the year in which such payments are actually issued. Counsel and the Parties do not purport to provide legal advice on tax matters to each other or Settlement Class Members. To the extent this Agreement, or any of its exhibits or related materials, is interpreted to contain or constitute advice regarding any U.S. federal or state tax issue, such advice is not intended or written to be used, and cannot be used, by any Person for the purpose of avoiding penalties under the Internal Revenue Code or any state's tax laws.

3.15.    Claims Administration Paid from Settlement Fund. All fees and expenses incurred by the Claims Administrator in administering claims and performing the other tasks set forth in this Agreement shall be paid from the Settlement Fund.

**4.    NOTICE**

4.1.    Settlement Website. After Preliminary Approval and prior to the Notice Date, the Claims Administrator shall establish the Settlement Website, which shall contain the following: Long Form Notice in both downloadable PDF format and HTML format with a clickable table of contents; answers to frequently asked questions; a Contact Information page that includes the address for the Claims Administrator and addresses and telephone numbers for Plaintiffs' Counsel; the First Amended Consolidated Class Action Complaint; the Agreement; the signed order of Preliminary Approval; a downloadable and online version of the Claim Form; a downloadable and online version of the form by which Settlement Class Members may exclude themselves from the

13

Settlement Class; and (when it becomes available) Plaintiffs' application for Attorneys' Fees and Costs and/or an application for Incentive Awards. The Settlement Website shall remain accessible until one hundred eighty (180) days after all Settlement Benefits are distributed.

  4.2. <u>Notice Plan</u>. Notice shall be provided as set forth in the Notice Plan, which shall be approved by Plaintiffs and Unilever.

  4.3. <u>Notice Supervision</u>. The Parties shall supervise the Claims Administrator in the performance of the notice functions set forth in this Section 4.

  4.4. <u>Federal Notice Requirements</u>. The Claims Administrator, at the direction of Unilever's counsel, shall timely comply with the notice requirements of 28 U.S.C. § 1715.

  4.5. <u>Certification of Compliance</u>. Prior to the hearing on Final Approval and in accordance with the Court's regular notice requirements, the Claims Administrator shall certify to the Court that it has complied with the notice requirements set forth herein.

## 5. ATTORNEYS' FEES, EXPENSES, AND CLASS REPRESENTATIVE PAYMENTS

  5.1. <u>Attorneys' Fees and Costs</u>. At least fifteen (15) days prior to the Objection and Exclusion Deadlines, Plaintiffs' Counsel may apply to the Court for an award of their Attorneys' Fees and Costs in a total amount not to exceed six hundred sixty thousand dollars ($660,000.00).

  5.2. <u>Service Awards</u>. At least fifteen (15) days prior to the Objection and Exclusion Deadlines, the Class Representatives may additionally apply to the Court for a Service Award of up to fifteen hundred dollars ($1,500.00) each as compensation for (a) the time and effort undertaken in and risks of pursuing this Action, including the risk of liability for the Parties' costs of suit, and (b) the general release set forth in Section 7.1.

5.3. <u>Attorneys' Fees and Costs and Service Awards Paid from Settlement Fund</u>. Any Attorneys' Fees and Costs and any Service Award awarded by the Court shall be paid from the Settlement Fund. In no event shall Unilever be obligated to pay to Plaintiffs, Plaintiffs' Counsel, the Claims Administrator, or the Settlement Class any amount beyond the Settlement Fund.

5.4. <u>No Effect on Agreement for Modifications/Denials</u>. Plaintiffs' Counsel and the Class Representatives agree that the denial, downward modification, failure to grant the request for Attorneys' Fees and Costs or an Service Award, or the reversal or modification on appeal of any such awards, shall not constitute grounds for modification or termination of this Agreement.

5.5. <u>Unilever's Cost and Fees</u>. Unilever shall be responsible for paying its own attorneys' fees and expenses.

5.6. <u>Fees and Award Distribution</u>. Any Attorneys' Fees and Costs and Service Awards approved by the Court shall be paid to Plaintiffs' Counsel out of the Settlement Fund within ten (10) business days after the Effective Date.

**6. CLASS SETTLEMENT PROCEDURES**

6.1. <u>Preliminary Approval</u>. As soon as practicable after the signing of this Agreement, Plaintiffs shall move for an order granting Preliminary Approval of this Agreement; conditionally certifying the Settlement Class for purposes of this Agreement only; approving the notice to the Settlement Class Members; and setting a hearing to consider Final Approval of the settlement and any objections thereto. Unilever shall have no obligation to make separate filings in support of the motion. Unilever may appear at the hearing through counsel to confirm its agreement with the terms of the settlement as provided herein.

6.2. <u>Final Approval</u>. Prior to the hearing on Final Approval and in accordance with the Court's regular notice requirements, Plaintiffs shall move for entry of an order of Final Approval,

granting Final Approval of this settlement and holding this Agreement to be final, fair, reasonable, adequate, and binding on all Settlement Class Members who are not Excluded Persons; ordering that the settlement relief be provided as set forth in this Agreement; ordering the releases as set forth in Section 7, below; and entering judgment in this case. Unilever shall have no obligation to make separate filings in support of the motion. Unilever may appear at the hearing through counsel to confirm its agreement with the terms of the settlement as provided herein.

6.3.     Notice. The Long Form Notice and Short Form Notice shall advise prospective Settlement Class Members of their rights to forego the benefits of this settlement and pursue an individual claim; to object to this settlement individually or through counsel; and to appear at the Final Approval hearing.

6.4.     Objections. If any Settlement Class Member wishes to object to the settlement, the Settlement Class Member must electronically file via the Court's ECF system, or deliver to the Clerk of the Court by mail, express mail, or personal delivery, a written notice of objection. To be timely, the objection must be received by the Clerk of the Court (not just postmarked or sent) prior the Objection Deadline. Each objection must include: (i) the case name *Barnes et al. v. Unilever United States, Inc.*, Case No. 1:21-cv-06191; (ii) the name, address, and telephone number of the objector; (iii) the name, address, and telephone number of all counsel (if any) who represent the objector, including any former or current counsel who may be entitled to compensation for any reason if the objection is successful; (iv) documents or testimony sufficient to establish membership in the Settlement Class; (v) a detailed statement of any objection asserted, including the grounds therefor; (vi) whether the objector is, and any reasons for, requesting the opportunity to appear and be heard at the Final Approval hearing; (vii) the identity of all counsel (if any) representing the objector who will appear at the Final Approval hearing and, if applicable, a list of

all persons who will be called to testify in support of the objection; (viii) copies of any papers, briefs, declarations, affidavits, or other documents upon which the objection is based; (ix) a detailed list of any other objections submitted by the Settlement Class Member, or his/her counsel, to any class actions submitted in any state or federal court in the United States in the previous five years (or affirmatively stating that no such prior objection has been made); and (x) the objector's signature, in addition to the signature of the objector's attorney (if any) —an attorney's signature alone shall not be deemed sufficient to satisfy this requirement. Failure to include documents or testimony sufficient to establish membership in the Settlement Class shall be grounds for overruling and/or striking the objection on grounds that the objector lacks standing to make the objection. Failure to include any of the information or documentation set forth in this paragraph also shall be grounds for overruling an objection.

6.5.    <u>Objections Filed with Court/Compliance with Objection Procedure Required</u>. If any objection is received by the Claims Administrator, the Claims Administrator shall promptly forward the objection and all supporting documentation to counsel for the Parties. Prior to the hearing on Final Approval and in accordance with the Court's regular notice requirements, Plaintiffs' counsel shall file any such objections and supporting documentation with the Court. The failure of the Settlement Class Member to comply with the filing requirements of Section 6.4 shall be grounds for striking and/or overruling the objection, even if the objection is submitted to the Claims Administrator.

6.6.    <u>Exclusions</u>. If any Settlement Class Member wishes to be excluded from this settlement and the Action, the Settlement Class Member may do so by completing the online exclusion form at the Settlement Website; downloading and submitting to the Claims Administrator a completed exclusion form; or submitting a valid request to exclude themselves, as

described in the Notice, to the Claims Administrator. Requests to exclude must be postmarked or submitted online by the Exclusion Deadline or they shall not be valid. For exclusion requests that are submitted online, the Settlement Class Member shall have the opportunity to print a page immediately after submission showing the information entered and the date and time the request for exclusion was submitted. Settlement Class Members who elect to exclude themselves from this settlement and the Action shall not be permitted to object to this settlement or to intervene. Settlement Class Members shall be encouraged, but not required, to provide their e-mail addresses in their requests for exclusion. Plaintiffs hereby agree not to request to exclude themselves from the Settlement Class. Any such request shall be void and of no force or effect.

6.7. <u>Objections/Exclusions Must Be Timely Filed</u>. The proposed Preliminary Approval order and Long Form Notice will provide that any Settlement Class Members wishing to object or exclude themselves who fail to properly or timely file or serve any of the requested information and/or documents will be precluded from doing so.

6.8. <u>Exclusions Submitted to Parties/Court</u>. Not later than ten (10) days after the Exclusion Deadline, the Claims Administrator shall provide to Class Counsel and Counsel for Unilever a complete list of the names of the persons who have excluded themselves from the Settlement Class in a valid and timely manner with copies of the exclusion requests. Plaintiffs' Counsel shall inform the Court of the number of persons who have timely and validly excluded themselves prior to the hearing on Final Approval and in accordance with the Court's regular notice requirements.

6.9. <u>Conflicting Submissions</u>. If a Settlement Class Member submits both a Claim Form and an exclusion request, the Claim Form shall take precedence and be considered valid and binding, and the exclusion request shall be deemed to have been sent by mistake and rejected. If a

Settlement Class Member submits both an objection and an exclusion request, the exclusion request shall take precedence and be considered valid and binding, and the objection shall be deemed to have been sent by mistake and rejected.

6.10. <u>Claims by Objectors</u>. A Settlement Class Member who objects to the settlement may also submit a Claim Form on or before the Claim Filing Deadline, which shall be processed in the same way as all other Claim Forms. A Settlement Class Member shall not be entitled to an extension of the Claim Filing Deadline merely because the Settlement Class Member has also submitted an objection.

6.11. <u>Failure to Obtain Approval</u>. This Agreement was entered into only for purposes of settlement. In the event that Preliminary or Final Approval of this settlement and this Agreement does not occur for any reason, or if Final Approval is reversed on appeal, or the Agreement is terminated, then no term or condition of this Agreement, or any draft thereof, or discussion, negotiation, documentation, or other part or aspect of the Parties' settlement discussions shall have any effect, nor shall any such matter be admissible in evidence for any purpose in the Action, or in any other proceeding (unless Plaintiffs' Counsel and Unilever mutually agree in writing to proceed with this Agreement) and the Action shall continue as if the settlement had not occurred. The Parties agree that all drafts, discussions, negotiations, documentation, or other information prepared in relation to this Agreement, and the Parties' settlement discussions, shall be treated as strictly confidential and may not, absent a court order, be disclosed to any Person other than the Parties' counsel.

## 7. RELEASE AND DISMISSAL WITH PREJUDICE

7.1. <u>Release</u>. Upon the Effective Date, Plaintiffs and Settlement Class Members and their agents, attorneys, assignees, or other representatives shall fully, finally, unconditionally,

irrevocably, and forever release the Released Parties from all claims, actions, suits, liens, judgments, damages, obligations, debts, demands, rights, causes of action, liabilities, controversies, costs, expenses, medical monitoring, attorneys' fees, and all other legal responsibilities in any form or nature, including but not limited to, all claims arising out of any state, local, or federal statute, ordinance, regulation, or law, at common law or equity, whether past, present, or future, known or unknown, asserted or unasserted, that arise out of or relate to (i) the facts alleged or the claims asserted (or that could have been asserted) in any of the complaints filed in the Action (before or after consolidation), or (ii) the labeling, marketing, advertising, promotion, sale, or distribution of the Covered Products.

7.2.    <u>Section 1542 Waiver</u>. The release of known or unknown and suspected or unsuspected claims includes waiver of all rights under Section 1542 of the California Civil Code (or any state equivalent), which reads as follows:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

7.3.    <u>Covenant Not to Sue</u>. Plaintiffs agree and covenant, and each Settlement Class Member will be deemed to have agreed and covenanted, not to sue any of the Released Parties with respect to any of the Released Claims, or otherwise to assist others in doing so, and agree to be forever barred from doing so, in any court of law or equity, or any other forum.

7.4.    <u>Dismissal with Prejudice</u>. The Parties agree that the Action shall be dismissed with prejudice.

**8.    NO ADMISSION OF LIABILITY**

Unilever, while continuing to deny all allegations of wrongdoing and disclaiming all liability with respect to all claims, considers it desirable to resolve the Action on the terms stated in this Agreement to avoid further expense, inconvenience, and burden, and therefore has determined that this Agreement on the terms set forth herein is in Unilever's best interests. Unilever denies any liability or wrongdoing of any kind associated with the claims alleged in the Action, and denies the material allegations of all the complaints filed in the Action. Neither the Agreement nor any actions taken to carry out the settlement are intended to be, nor may they be deemed or construed to be, an admission or concession of liability, or of the validity of any claim, defense, or of any point of fact or law on the part of any Party, including but not limited to an admission that this Action is properly brought on a class or representative basis, or that a class or classes may be certified, other than for settlement purposes. Neither the Agreement, nor the fact of settlement, nor the settlement proceedings, nor the settlement negotiations, nor any related document, shall be used as an admission, concession, presumption, inference, or evidence of any wrongdoing by Unilever or of the appropriateness of these or similar claims for class certification in any proceeding.

**9.    MISCELLANEOUS**

9.1.    <u>Good Faith</u>. Subject to the limitations expressed herein, the Parties' counsel shall use their best efforts to cause the Court to give Preliminary Approval to this Agreement and settlement as promptly as practicable, to take all steps contemplated by this Agreement to effectuate the settlement on the stated terms and conditions, to cooperate in addressing any objections, and to obtain Final Approval of this Agreement. The Parties and Counsel shall not encourage anyone directly or indirectly to opt out or object. The Class Representatives shall not

opt out or object. If the Court requires changes to the Agreement as a prerequisite to Preliminary Approval or Final Approval, the Parties shall negotiate in good faith regarding such changes but are under no obligation to agree upon any such changes.

9.2.    <u>Publicity</u>. Except as provided for in the Notice Plan approved by the Court, Plaintiffs and Plaintiffs' Counsel will not issue any press release or otherwise publicize the settlement on websites, social media or any other electronic or paper medium, or on any class action facilitator websites or social media platforms and shall make no statements, including statements to the press or any other public statements, that disparage Unilever, any Released Party, or any of the Covered Products, or accuse Unilever or any Released Party of any wrongdoing regarding this Agreement or the Action or the subject matter thereof. To the extent any statement is made in response to media inquiries, it will be made in language agreed upon in advance by the Parties, provided, however, that agreement on language shall not be unreasonably withheld so long as the language proposed is non-disparaging.

9.3.    <u>Non-Disparagement</u>. Plaintiffs and Plaintiffs' Counsel agree that they will not make any statements or remarks about Unilever that defames, disparages, or in any way criticizes the reputation, practices, or conduct of Unilever or its brands, products, officers, directors, or employees. Plaintiffs and Plaintiffs' Counsel further agree that they shall not encourage any family member, friend, or other person or entity to make any statements or remarks about Unilever or its brands, products, officers, directors, or employees that defames, disparages, or in any way criticizes the reputation, practices, or conduct of Unilever or its brands, products, officers, directors, or employees. Nothing herein shall prevent Plaintiffs or Plaintiffs' Counsel from testifying truthfully in connection with any litigation, arbitration, or administrative proceeding if compelled to do so by a subpoena or court order.

9.4.    Representations. Neither Plaintiffs nor Plaintiffs' Counsel have communicated with any other potential plaintiff regarding bringing new claims against Unilever or its affiliated companies related to Suave aerosol antiperspirant products. Neither Plaintiffs nor Plaintiffs' Counsel are aware of any other potential plaintiff or class member or attorney who intends to make a demand or bring such litigation related to Suave aerosol antiperspirant products. Neither Plaintiffs nor Plaintiffs' Counsel have been notified or otherwise informed of any such intention or consideration as described above.

9.5.    Change of Time Periods for Notice/Hearings. The time periods and/or dates described in this Agreement with respect to the giving of notices and hearings are subject to approval and change by the Court or by the written agreement of Plaintiffs' Counsel and Unilever's Counsel, without notice to Settlement Class Members except that the Claims Administrator shall ensure that such dates are posted on the Settlement Website.

9.6.    Termination Due to Material Changes. Except for changes to the time periods as set forth in the prior paragraph, all other terms and limitations set forth in this Agreement and in the documents referred to or incorporated herein (including but not limited to the Long Form Notice, Short Form Notice, Online Advertisement and the Claim Form) shall be deemed material to the Parties' agreement, and in the event any such other term is altered or amended by the Court (including if the Court refuses to certify the Settlement Class and/or modifies the definition of the class), or any other court, or if any federal or state authority objects to or requires modifications to the Agreement, any Party whose rights or obligations are affected by the alteration or amendment may terminate this Agreement upon written notice to the other Party. The termination of the Agreement shall be deemed effective five (5) days after the provision of notice pursuant to this paragraph, or at any later date agreed in writing by the Parties ("Termination Date").

9.7. <u>Time for Compliance</u>. All time periods set forth herein shall be computed in calendar days unless otherwise specified. If the date for performance of any act required by or under this Agreement falls on a Saturday, Sunday or court holiday, that act may be performed on the next business day with the same effect as if it had been performed on the day or within the period of time specified by or under this Agreement.

9.8. <u>Governing Law</u>. This Agreement is intended to and shall be governed by the laws of the State of Illinois, without regard to conflicts of law principles.

9.9. <u>Arms-Length Negotiations</u>. This Agreement compromises claims that are contested, and the Parties agree that the consideration provided to the Settlement Class and other terms of this Agreement were negotiated in good faith and at arms' length by the Parties, and reflect an Agreement that was reached voluntarily, after consultation with competent legal counsel, and guided by the Parties' mediation with the Honorable Beverly Hodgson (Ret.). The Parties reached the Agreement after considering the risks and benefits of litigation. The determination of the terms of, and the drafting of, this Agreement, has been by mutual agreement after negotiation, with consideration by and participation of all Parties hereto and their counsel. Accordingly, the rule of construction that any ambiguities are to be construed against the drafter shall have no application.

9.10. <u>Entire Agreement/Modification</u>. The terms and conditions set forth in this Agreement constitute the complete and exclusive statement of the agreement between the Parties hereto relating to the subject matter of this Agreement, superseding all previous negotiations and understandings, and may not be contradicted by evidence of any prior or contemporaneous agreement. The Parties further intend that this Agreement constitutes the complete and exclusive statement of its terms as between the Parties hereto, and that no extrinsic evidence whatsoever may be introduced in any agency or judicial proceeding, if any, involving this Agreement. Any

amendment or modification of the Agreement must be in writing signed by each of the Parties and their counsel.

9.11.   Investigation. In making and executing this Agreement, the Parties have made such investigation of the facts and the law pertaining to the matters described herein and this Agreement as they deem necessary, and they do not rely and have not relied upon any statement or representation, oral or written, made by any of the other Parties to this Agreement with regard to any of the facts involved in any dispute or possible dispute between any of the Parties hereto, or with regard to any of their rights or asserted rights, or with regard to the advisability of making and executing this Agreement, or anything else.

9.12.   Assumption of Risk. The Parties hereby expressly assume the risk of any mistake of fact or that the true facts might be other or different from facts now known or believed to exist, and it is the express intention of the Parties to forever settle their disputes without regard to who may or may not have been correct in their respective understandings of the facts or the laws relating thereto.

9.13.   Successors and Assigns. This Agreement shall be binding upon and inure to the benefit of the respective beneficiaries, heirs, successors, and assigns of the Parties hereto.

9.14.   Waiver. The waiver by any Party of any provision or breach of this Agreement shall not be deemed a waiver of any other provision or breach of this Agreement.

9.15.   Execution. This Agreement shall become effective upon its execution by all of the undersigned. The Parties may execute this Agreement in counterparts and/or by fax or electronic mail, and execution of counterparts shall have the same force and effect as if all Parties had signed the same instrument.

9.16. <u>Headings</u>. Headings and section numbers herein are inserted merely for the reader's convenience, and in no way define, limit, construe, or otherwise describe the scope or intent of the provisions of this Agreement.

9.17. <u>Extensions of Time for Performance</u>. The Parties reserve the right, by agreement and subject to the Court's approval, to grant any reasonable extension of time that might be needed to carry out any of the provisions of this Agreement.

9.18. <u>Continuing Jurisdiction</u>. The Court shall retain jurisdiction to enforce, interpret, and implement this Agreement. All Parties hereto submit to the jurisdiction of the Court for these purposes.

9.19. <u>Notices to Parties/Counsel</u>. All notices to the Parties or counsel required by this Agreement shall be made in writing and communicated by mail and fax or e-mail to the following addresses:

If to Plaintiffs or Plaintiffs' Counsel:

Max S. Roberts
BURSOR & FISHER, P.A.
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Tel: (646) 837-7150
Fax: (212) 989-9189
E-Mail: mroberts@bursor.com

Charles E. Schaffer
LEVIN SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Tel: 215-592-1500
E-Mail: cschaffer@lfsblaw.com

If to Defendant Unilever United States, Inc.:

James P. Muehlberger
Evan Montgomery
Shook, Hardy & Bacon L.L.P.
2555 Grand Boulevard
Kansas City, MO 64108
Telephone: (816) 474-6550
E-mail: jmuehlberger@shb.com
E-mail: emontgomery@shb.com

Patrick Oot
Shook, Hardy & Bacon L.L.P.
1800 K Street NW, Suite 1000
Washington, D.C. 20006
Telephone: (202) 783-8400
E-mail: oot@shb.com

Lynn H. Murray
Shook, Hardy & Bacon L.L.P.
111 S. Wacker Drive, Suite 4700
Chicago, IL 60606
Telephone: (312) 704-7700
E-mail: lhmurray@shb.com

IN WITNESS HEREOF the undersigned, being duly authorized, have caused this Agreement to be executed on the dates shown below and agree that it shall take effect on the last date it is executed by all of the undersigned.

Dated: _____

                                     _____
                                       Yvonne Barnes
                                       *Plaintiff*

Dated: _____

                                       _____
                                       Patricia Dean
                                       *Plaintiff*

Dated: 2/27/2024

                                       DocuSigned by:
                                       D5D849F5D55043F...
                                       Antonio Morris
                                       *Plaintiff*

Dated: _____

                                       _____
                                       Bernadette Bogdanovs
                                       *Plaintiff*

Dated: _____

                                       _____
                                       LEVIN SEDRAN & BERMAN
                                       Charles E. Schaffer, Esq.
                                       510 Walnut Street, Suite 500
                                       Philadelphia, PA 19106
                                       Tel: 215-592-1500
                                       E-Mail: cschaffer@lfsblaw.com

Dated: _____

                                       _____
                                       MILBERG COLEMAN BRYSON
                                       PHILLIPS GROSSMAN PLLC
                                       Nick Suciu, III
                                       6905 Telegraph Rd., Suite 115
                                       Bloomfield Hills, MI 48301
                                       Tel: (313) 303-3472
                                       E-Mail: nsuciu@milberg.com

IN WITNESS HEREOF the undersigned, being duly authorized, have caused this Agreement to be executed on the dates shown below and agree that it shall take effect on the last date it is executed by all of the undersigned.

Dated: _____

_____
Yvonne Barnes
*Plaintiff*


Dated: _____

_____
Patricia Dean
*Plaintiff*


Dated: _____

_____
Antonio Morris
*Plaintiff*


Dated: 27/02/2024

_____
Bernadette Bogdanovs [Feb 27, 2024 12:00 PST]
Bernadette Bogdanovs
*Plaintiff*


Dated: _____

_____
LEVIN SEDRAN & BERMAN
Charles E. Schaffer, Esq.
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Tel: 215-592-1500
E-Mail: cschaffer@lfsblaw.com


Dated: _____

_____
MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN PLLC
Nick Suciu, III
6905 Telegraph Rd., Suite 115
Bloomfield Hills, MI 48301
Tel: (313) 303-3472
E-Mail: nsuciu@milberg.com

IN WITNESS HEREOF the undersigned, being duly authorized, have caused this Agreement to be executed on the dates shown below and agree that it shall take effect on the last date it is executed by all of the undersigned.

Dated: 29/02/2024

Signature: _____
Yvonne Barnes (Feb 29, 2024 15:19 CST)

Yvonne Barnes
*Plaintiff*

Dated: 29/02/2024

Signature: _____
Patricia Dean (Feb 29, 2024 11:56 CST)

Patricia Dean
*Plaintiff*

Dated: _____

_____
Antonio Morris
*Plaintiff*

Dated: _____

_____
Bernadette Bogdanovs
*Plaintiff*

Dated: 2/28/2024

LEVIN SEDRAN & BERMAN
Charles E. Schaffer, Esq.
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Tel: 215-592-1500
E-Mail: cschaffer@lfsblaw.com

Dated: 2/28/2024

MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN PLLC
Nick Suciu, III
6905 Telegraph Rd., Suite 115
Bloomfield Hills, MI 48301
Tel: (313) 303-3472
E-Mail: nsuciu@milberg.com

28

Dated: 2/27/24

_____
SHUB & JOHNS LLC
Jonathan Shub
Four Tower Bridge
200 Barr Harbor Dr. Ste. 400
West Conshohocken, PA 19428
Tel: (610) 477-8380
E-Mail: jshub@shublawyers.com

Dated: 02/29/2024

*Max S. Roberts*
_____
BURSOR & FISHER, P.A.
Max S. Roberts
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Tel: (646) 837-7150
E-mail: mroberts@bursor.com

Dated: 2/28/2024

_____
THE SULTZER LAW GROUP, P.C.
Jason P. Sultzer
85 Civic Center Plaza, Suite 200
Poughkeepsie, NY 12601
Tel: (845) 483-7100
E-mail: sultzerj@thesultzerlawgroup.com

*On behalf of Plaintiffs and the Settlement Class*

Dated: _____

_____
By:

*On behalf of Unilever United States, Inc.*

Dated: _____

_____
SHOOK, HARDY & BACON L.L.P.
James P. Muehlberger
2555 Grand Boulevard
Kansas City, MO 64108

29

DocuSign Envelope ID: DB3B7699-E674-420B-ABF7-E373687C7976

Dated: _____

SHUB & JOHNS LLC
Jonathan Shub
Four Tower Bridge
200 Barr Harbor Dr. Ste. 400
West Conshohocken, PA 19428
Tel: (610) 477-8380
E-Mail: jshub@shublawyers.com

Dated: _____

BURSOR & FISHER, P.A.
Max S. Roberts
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Tel: (646) 837-7150
E-mail: mroberts@bursor.com

Dated: _____

THE SULTZER LAW GROUP, P.C.
Jason P. Sultzer
85 Civic Center Plaza, Suite 200
Poughkeepsie, NY 12601
Tel: (845) 483-7100
E-mail: sultzerj@thesultzerlawgroup.com

*On behalf of Plaintiffs and the Settlement
Class*

Dated: 02/29/24 _____

Herrish Patel
President, Unilever USA, and CEO,
Personal Care North America

Dated: 02/29/2024 _____

SHOOK, HARDY & BACON L.L.P.
James P. Muehlberger
2555 Grand Boulevard
Kansas City, MO 64108
Tel: (816) 474-6550
E-mail: jmuehlberger@shb.com

*On behalf of Unilever United States, Inc.*

29

**LIST OF EXHIBITS**

Exhibit A: Claim Form

Exhibit B: Notice Plan

Exhibit B1: Long Form Notice

Exhibit B2: Short Form Notice

Exhibit B3: Online Advertisement

**EXHIBIT A**

<table>
<tr><td>

**Your Claim Form must be submitted online or postmarked by:**
**[DEADLINE]**

</td><td>

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

*BARNES V. UNILEVER UNITED STATES INCORPORATED*

**CASE NO. 1:21-CV-06191 (N.D. ILL.)**

**CLAIM FORM**

</td><td>

**SUA-CLAIM**

</td></tr>
</table>

### CLAIM FORM INSTRUCTIONS

1. You may submit your Claim Form online at [WEBSITE URL] or by U.S. Mail to the following address: *Suave Antiperspirant Settlement*, c/o Claims Administrator, 1650 Arch Street, Suite 2210, Philadelphia, PA 19103. Please make sure to include the completed and signed Claim Form and all supporting materials in one envelope.

2. You must complete the entire Claim Form. Please type or write your responses legibly.

3. Please keep a copy of your Claim Form and any supporting materials you submit. Do not submit your only copy of the supporting documents. Materials submitted will not be returned. Copies of documentation submitted in support of your Claim should be clear and legible.

4. If your Claim Form is incomplete or missing information, the Claims Administrator may contact you for additional information. If you do not respond, the Claims Administrator will be unable to process your claim, and you will waive your right to receive money under the Settlement.

5. If you have any questions, please contact the Claims Administrator by email at [EMAIL ADDRESS] or by mail at the address listed above.

6. Settlement Benefits:

   - **Proof of Purchase**. Settlement Class Members who timely submit a Valid Claim with Proof of Purchase shall receive the purchase price for each Covered Product listed on the Proof of Purchase, inclusive of all taxes.
   - **No Proof of Purchase**. Settlement Class Members who submit a Valid Claim without Proof of Purchase shall receive the average retail price—$3.29—for up to three (3) Covered Products claimed per household.
   - **Reduction for Recall Reimbursement Program**. Each Settlement Class Member's payment shall be decreased by the amount of cash or voucher payments that the Settlement Class Member has received or will receive for claims made in the Recall Reimbursement Program (provided that the payment shall not be reduced below $0.00).
   - **Pro Rata Adjustment**. Each Settlement Class Member's payment shall be increased or decreased on a pro rata basis, as necessary, such that the total amount paid to all Settlement Class Members equals the Available Settlement Funds.

7. **You must notify the Claims Administrator if your address changes. If you do not, you may not receive your payment.**

8. **DEADLINE -- Your claim must be submitted online by [DEADLINE DATE]. Claim Forms submitted by mail must be mailed to the Claims Administrator postmarked no later than [DEADLINE DATE].**

<table>
<tr><td>

**Your Claim Form must be submitted online or postmarked by:**
**[DEADLINE]**

</td><td>

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

*BARNES V. UNILEVER UNITED STATES INCORPORATED*

**CASE NO. 1:21-CV-06191 (N.D. ILL.)**

**CLAIM FORM**

</td><td>

**SUA-CLAIM**

</td></tr>
</table>

## I. SETTLEMENT CLASS MEMBER NAME AND CONTACT INFORMATION

Provide your name and contact information below. You must notify the Claims Administrator if your contact information changes after you submit this claim form.

First Name

Last Name

Street Address

City

State

Zip Code

Email Address

## II. COVERED PRODUCTS PURCHASE INFORMATION

☐ **Check this box if you are enclosing Proof of Purchase[1] of a Covered Product[2].**

Settlement Class Members who timely submit a Valid Claim with Proof of Purchase shall receive the purchase price for each Covered Product listed on the Proof of Purchase, inclusive of all taxes.

Number of Covered Products purchased:

Total amount paid (including taxes) for the Covered Products:

☐ **Check this box if you do not have proof of purchase of a Covered Product.**

Settlement Class Members who submit a Valid Claim without Proof of Purchase shall receive the average retail price—$3.29—for up to three (3) Covered Products claimed per household. Complete the following chart for the Covered Products you are claiming:

---

[1] "Proof of Purchase" means an itemized retail sales receipt, retail store club or loyalty card record, or other document showing, at a minimum, the purchase of a Covered Product, the purchase price, and the date and place of the purchase.
[2] "Covered Products" means Suave 24-Hour Protection Powder Aerosol Antiperspirant and Suave 24-Hour Protection Fresh Aerosol Antiperspirant.

2

<table>
<tr><td><strong>Your Claim Form must be submitted online or postmarked by:<br>[DEADLINE]</strong></td><td><strong>UNITED STATES DISTRICT COURT<br>NORTHERN DISTRICT OF ILLINOIS</strong><br><br><em>BARNES V. UNILEVER UNITED STATES INCORPORATED</em><br>CASE NO. 1:21-CV-06191 (N.D. ILL.)<br><br><strong>CLAIM FORM</strong></td><td><strong>SUA-CLAIM</strong></td></tr>
</table>

| **Name of the Covered Product Purchased** | **Approximate Purchase Date (MM/YYYY)** |
|---|---|
|  |  |
|  |  |
|  |  |

## III. PAYMENT SELECTION

Please select from **one** of the following payment options:

☐ **Prepaid Mastercard**
  Enter the email address you want the Prepaid Mastercard sent to: _____

☐ **Venmo**
  Enter the mobile number associated with your Venmo account: _____

☐ **Zelle**
  Enter the email address or phone number associated with your Zelle account: _____

*Paper checks will be available only upon request. If you would like to request a paper check, please contact the Claims Administrator at XXX-XXX-XXXX.

## IV. SIGNATURE AND ATTESTATION UNDER PENALTY OF PERJURY

By signing below and submitting this Claim Form, I hereby swear under penalty of perjury that:

- I am a natural person who, between January 1, 2018, and the date of Preliminary Approval, purchased in the United States any Covered Product for personal, family or household use, and not resale;
- The information provided in this Claim Form, including any accompanying supporting documentation, is true and correct to the best of my knowledge;
- Nobody has submitted another claim in connection with this Settlement on my behalf; and
- I understand the Claims Administrator may contact me requesting additional information about my claim and that failure to provide the requested information may result in the denial of my claim.


_____          Date: _____
Your signature                                                              MM          DD          YYYY

<table>
<tr><td>

**Your exclusion must be submitted online or postmarked by: [DEADLINE]**

</td><td>

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

*BARNES v. UNILEVER UNITED STATES INCORPORATED*

CASE NO. 1:21-CV-06191 (N.D. ILL.)

**EXCLUSION FORM**

</td><td>

**SUA-EX**

</td></tr>
</table>

## SETTLEMENT CLASS MEMBER INFORMATION

|  |  |
|---|---|
| **First Name** | **Last Name** |

**Street Address**

|  |  |  |
|---|---|---|
| **City** | **State** | **Zip Code** |

**Email Address**

## SIGNATURE

By signing below, I affirm that I am a Settlement Class Member who, between January 1, 2018, and the date of Preliminary Approval, purchased in the United States any Covered Product[1] for personal family or household use, and not resale, and that **I wish to be excluded from the Settlement in *Barnes v. Unilever United States Incorporated*, Case No. 1:21-cv-06191 (N.D. Ill.).** I understand that by submitting this form I am requesting exclusion from the Settlement, and I will not receive a payment from the Settlement.

_____     Date: _____

Your signature                                                       MM        DD        YYYY

**This form must be submitted online at [Website URL] or mailed to the Claims Administrator at the address below, so it is postmarked by [Deadline Date].**

*Suave Antiperspirant Settlement*
ATTN: Exclusion Request
PO Box 58220
Philadelphia, PA 19102

---

[1] Covered Products include Suave 24-Hour Protection Powder Aerosol Antiperspirant and Suave 24-Hour Protection Fresh Aerosol Antiperspirant.

**EXHIBIT B**

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| YVONNE BARNES, PATRICIA DEAN, ANTONIO MORRIS, and BERNADETTE BOGDANOVS, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>UNILEVER UNITED STATES, INC.<br><br>Defendant. | Case No.: 121-cv-06191<br><br>**DECLARATION OF STEVEN WEISBROT, ESQ. RE: ANGEION GROUP QUALIFICATIONS & THE PROPOSED NOTICE PLAN** |

I, Steven Weisbrot, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1.      I am the President and Chief Executive Officer at the class action notice and claims administration firm Angeion Group, LLC ("Angeion"). Angeion specializes in designing, developing, analyzing, and implementing large-scale, un-biased, legal notification plans.

2.      I have personal knowledge of the matters stated herein. In forming my opinions regarding notice in this action, I have drawn from my extensive class action experience, as described below.

3.      I have been responsible in whole or in part for the design and implementation of hundreds of court-approved notice and administration programs, including some of the largest and most complex notice plans in recent history. I have taught numerous accredited Continuing Legal Education courses on the Ethics of Legal Notification in Class Action Settlements, using Digital Media in Due Process Notice Programs, as well as Claims Administration, generally. I am the author of multiple articles on Class Action Notice, Claims Administration, and Notice Design in publications such as Bloomberg, BNA Class Action Litigation Report, Law360, the ABA Class Action and Derivative Section Newsletter, and I am a frequent speaker on notice issues at conferences throughout the United States and internationally.

4.      I was certified as a professional in digital media sales by the Interactive Advertising Bureau ("IAB") and I am co-author of the Digital Media section of Duke Law's *Guidelines and Best Practices—Implementing 2018 Amendments to Rule 23* and the soon to be published George Washington Law School Best Practices Guide to Class Action Litigation.

5.      I have given public comment and written guidance to the Judicial Conference Committee on Rules of Practice and Procedure on the role of direct mail, email, broadcast media, digital media, and print publication, in effecting Due Process notice, and I have met with representatives of the Federal Judicial Center to discuss the 2018 amendments to Rule 23 and offered an educational curriculum for the judiciary concerning notice procedures.

6.      Prior to joining Angeion's executive team, I was employed as Director of Class Action services at Kurtzman Carson Consultants, an experienced notice and settlement administrator. Prior to my notice and claims administration experience, I was employed in private law practice.

7.      My notice work comprises a wide range of class actions that include consumer product defect and false advertising matters, data breach, mass disasters, employment discrimination, antitrust, tobacco, banking, firearm, insurance, and bankruptcy cases.

8.      I have been at the forefront of infusing digital media, as well as big data and advanced targeting, into class action notice programs. Courts have repeatedly recognized my work in the design of class action notice programs. A comprehensive summary of judicial recognition Angeion has received is attached hereto as **Exhibit A**.

9.      By way of background, Angeion is an experienced class action notice and claims administration company formed by a team of executives that have had extensive tenures at five other nationally recognized claims administration companies. Collectively, the management team at Angeion has overseen more than 2,000 class action settlements and distributed over $15 billion to class members. The executive profiles as well as the company overview are available at www.angeiongroup.com.

10.      As a class action administrator, Angeion has regularly been approved by both federal and state courts throughout the United States and abroad to provide notice of class actions and claims

processing services.

11. Angeion has extensive experience administering landmark settlements involving some of the world's most prominent companies, including:

**In re: Facebook, Inc Consumer Privacy User Profile Litigation**
Case No. 3:18-md-02843-VC (N.D. Cal.)
Meta agreed to pay $725 million to settle allegations that the social media company allowed third parties, including Cambridge Analytica, to access personal information. Angeion undertook an integrated in-app notification and media campaign to a class in the hundreds of millions of individuals and processed 28.6 million claims, the most claims filed in the history of class action. In fact, during the September 7, 2023, Final Approval Hearing, U.S. District Judge Chhabria acknowledged the record number of claims filed, stating, "I was kind of blown away by how many people made claims."

**In re: Apple Inc. Device Performance Litigation**
Case No. 5:18-md-02827-EJD (N.D. Cal.)
Apple agreed to pay $310 million to settle allegations of diminished performance in iPhone 6's and 7's. Angeion's direct notification efforts were recognized as reaching 99%+ of the current and former owners of 129 million class devices. Millions of claims were processed.

**City of Long Beach, et al. v. Monsanto, et al.**
Case No. 2:16-cv-03493-FMO-AS (C.D. Cal.)
Bayer agreed to pay $650 million to settle allegations of waterbodies impaired by PCBs. Angeion's notice administration was extraordinarily successful with 99.7% of the class delivered direct notice. The claims administration includes multiple complex claims filing workflows for different funding allocations, including separate fund for "special needs" claimants.

**Beckett v. Aetna Inc.**
Case No. 2:17-cv-03864-JS (E.D. Pa.)
A consolidated data breach class action that arose from the improper disclosure of Protected Health Information by a health insurer and previous claims administrator, including confidential HIV-related information. Angeion provided specialized training to our support team concerning the sensitive nature of the case and underlying health information. Angeion implemented robust privacy protocols to communicate with and verify the claims of the affected class members, including anonymized notice packets and allowing claimants to lodge objections under pseudonyms.

12. Additionally, Angeion will leverage its prior experience administering consumer settlements alleging benzene or bacterial contamination:

| Case | Case No. | Court | Products Allegedly Contained |
|------|----------|-------|------------------------------|
| Bangoura et al. v. Beiersdorf Inc. and Bayer Healthcare LLC | 1:22-cv-00291 | E.D.N.Y. | Benzene |
| Delcid et al. v. TCP Hot Acquisition LLC & Idelle Labs, LTD. | 1:21-cv-09569 | S.D.N.Y. | Benzene |
| Evans et al. v. Church & Dwight Co. Inc. | 1:22-cv-06301 | N.D. Ill. | Benzene |
| Goldstein v. Henkel Corporation and Thriving Brands LLC | 3:22-cv-00164 | D. Conn. | Benzene |
| Patora v. Colgate-Palmolive Co. | 7:23-cv-01888 | S.D.N.Y. | Pseudomonas aeruginosa bacteria |
| Swetz v. Clorox Co. | 7:22-cv-09374 | S.D.N.Y. | Pseudomonas aeruginosa bacteria |

## DATA SECURITY & INSURANCE

13.    Angeion recognizes the critical need to secure our physical and network environments and protect data in our custody. It is our commitment to these matters that has made us the go-to administrator for many of the most prominent data security matters of this decade. We are ever improving upon our robust policies, procedures, and infrastructure by periodically updating data security policies as well as our approach to managing data security in response to changes to physical environment, new threats and risks, business circumstances, legal and policy implications, and evolving technical environments.

14.    Angeion's privacy practices are compliant with the California Consumer Privacy Act, as currently drafted. Consumer data obtained for the delivery of each project is used only for the purposes intended and agreed in advance by all contracted parties, including compliance with orders issued by State or Federal courts as appropriate. Angeion imposes additional data security measures for the protection of Personally Identifiable Information (PII) and Personal Health Information (PHI), including redaction, restricted network and physical access on a need-to-know basis, and network access tracking. Angeion requires background checks of all employees, requires background checks and ongoing compliance audits of its contractors, and enforces standard protocols for the rapid removal of physical and network access in the event of an employee or contractor termination.

15.    Data is transmitted using Transport Layer Security (TLS) 1.3 protocols. Network data is encrypted at rest with the government and financial institution standard of AES 256-bit encryption. We maintain an offline, air-gapped backup copy of all data, ensuring that projects can be administered without interruption.

16.     Further, our team conscientiously monitors the latest compliance requirements, such as GDPR, HIPAA, PCI DSS, and others, to ensure that our organization is meeting all necessary regulatory obligations as well as aligning to industry best practices and standards set forth by frameworks like CIS and NIST. Angeion is cognizant of the ever-evolving digital landscape and continually improves its security infrastructure and processes, including partnering with best-in-class security service providers. Angeion's robust policies and processes cover all aspects of information security to form part of an industry leading security and compliance program, which is regularly assessed by independent third parties. Angeion is also committed to a culture of security mindfulness. All employees routinely undergo cybersecurity training to ensure that safeguarding information and cybersecurity vigilance is a core practice in all aspects of the work our teams complete.

17.     Angeion currently maintains a comprehensive insurance program, including sufficient Errors & Omissions coverage.

## OVERVIEW OF THE NOTICE PLAN

18.     This declaration will describe the Notice Plan for the Class that, if approved by the Court, Angeion will implement in this matter, including the considerations that informed the development of the plan and why we believe it will provide due process to Class Members.  In my professional opinion, the proposed Notice Plan described herein is the best practicable notice under the circumstances and fulfills all due process requirements, fully comporting with Fed. R. Civ. P. 23.

19.     The comprehensive Notice Plan provides for direct notice via email to reasonably identifiable Class Members combined with a robust state-of-the-art media campaign, and the implementation of a dedicated website ("Settlement Website") and toll-free telephone line where Class Members can learn more about their rights and options pursuant to the terms of the Settlement.

20.     As discussed in greater detail below, the media campaign component of the Notice Plan is designed to deliver an approximate 75.15% reach with an average frequency of 3.08 times. This number is calculated using objective syndicated advertising data relied upon by most advertising agencies and brand advertisers. It is further verified by sophisticated media software and calculation engines that cross reference which media is being purchased with the media habits of our specific

Target Audience (defined below). What this means in practice is that 75.15% of our Target Audience will see a digital advertisement concerning the settlement an average of 3.08 times each. The 75.15% reach is separate and apart from, and in addition to the email notice, Settlement Website, and toll-free telephone support.

21.    The Federal Judicial Center states that a publication notice plan that reaches 70% of class members is one that reaches a "high percentage" and is within the "norm." Barbara J. Rothstein & Thomas E. Willging, Federal Judicial Center, "Managing Class Action Litigation: A Pocket Guide or Judges," at 27 (3d Ed. 2010).

## DIRECT NOTICE

**Class Member Data**

22.    Angeion will review and analyze the Class Member data that it receives. In doing so, Angeion performs a thorough analysis to identify duplicative records, as well as identify missing/incomplete data fields. Angeion will then assign identification numbers to each unique record, which will comprise the final Class Member email list ("Class List").

**Email Notice**

23.    As part of the Notice Plan, Angeion will send direct email notice to Class Members who have valid email addresses included on the Class List provided to Angeion.

24.    Angeion follows best practices to both validate emails and increase deliverability. Specifically, prior to distributing the email notice, Angeion will subject the email addresses it receives to a cleansing and validation process. The email cleansing process removes extra spaces, fixes common typographical errors in domain names, and corrects insufficient domain suffixes (*e.g.*, gmal.com to gmail.com, gmail.co to gmail.com, yaho.com to yahoo.com, etc.). The email addresses will then be subjected to an email validation process whereby each email address will be compared to known bad email addresses.[1] Email addresses that are not designated as a known bad address will then be further verified by contacting the Internet Service Provider ("ISP") to determine if the email

---

[1] Angeion maintains a database of email addresses that were returned as permanently undeliverable, commonly referred to as a hard bounce, from prior campaigns. Where an address has been returned as a hard bounce within the last year, that email is designated as a known bad email address.

address exists.

25.     Further, Angeion designs email notice to avoid many common "red flags" that might otherwise cause an email recipient's spam filter to block or identify the email notice as spam. For example, Angeion does not include attachments like the Long Form Notice or Claim Form to the email notice, because attachments are often interpreted by various ISP as spam.

26.     Angeion also accounts for the real-world reality that some emails will inevitably fail to be delivered during the initial delivery attempt. Therefore, after the initial noticing campaign is complete, Angeion, after an approximate 24- to 72-hour rest period (which allows any temporary block at the ISP level to expire) will cause a second round of email noticing to any email addresses that were previously identified as soft bounces and not delivered. In our experience, this minimizes emails that may have erroneously failed to deliver due to sensitive servers and optimizes delivery.

27.     At the completion of the email campaign, Angeion will report to the Court concerning the rate of delivered emails accounting for any emails that are blocked at the ISP level. In short, the Court will possess a detailed, verified account of the success rate of the entire direct email notice campaign.

## MEDIA NOTICE CAMPAIGN

28.     In addition to the direct email notice, the Notice Plan provides for a  of state-of-the-art media campaign comprised of internet banner advertisements ("programmatic display advertising"), social media notice, and search engine marketing, that is designed to deliver an approximate 75.15% reach with an average frequency of 3.08 times each by delivering approximately 15.9 million impressions.

**Programmatic Display Advertising**

29.     Angeion will utilize a form of internet advertising known as Programmatic Display Advertising, which is the leading method of buying digital advertisements in the United States.[2] In laymen's terms, programmatic advertising is a method of advertising where an algorithm identifies

---

[2] Programmatic Display Advertising is a trusted method specifically utilized to reach defined target audiences. Programmatic digital display ad spending in the United States exceeded $135 billion in 2023 and is forecasted to approach $180 billion by 2025. *See* https://www.insiderintelligence.com/content/programmatic-ad-spending-set-reach-nearly-180-billion-by-2025 (Last visited: February 2, 2024)

and examines demographic profiles and uses advanced technology to place advertisements on the websites where members of the audience are most likely to visit (these websites are accessible on computers, mobile phones and tablets). The media notice outlined below is strategically designed to provide notice of the Settlement to these individuals by driving them to the Settlement Website where they can learn more about the Settlement, including their rights and options.

30.    To develop the media notice campaign and to verify its effectiveness, our media team analyzed data from 2023 comScore Multi-Platform/MRI Simmons USA Fusion[3] to profile the Class and arrive at an appropriate Target Audience. Specifically, the following syndicated research definition was used to profile potential Class Members:

- **Deodorants and Antiperspirants: Total Users: Used in the last 6 months: Suave** "AND"
- **Deodorants and Antiperspirants: Total Users: Used in the last 6 months: Scented** "AND"
- **Women**

31.    Based on the target definition used, the size of the Target Audience for the media notice campaign is approximately 6,890,000 individuals. Digital media platforms provide numerous data segments dedicated to consumer brands. We will rely heavily on that data to help us ensure we are reaching users of Suave antiperspirant deodorants.

32.    It is important to note that the Target Audience serves as a proxy for, and is distinct from, the Settlement Class definition, as is commonplace in class action notice plans. Utilizing an overinclusive proxy audience maximizes the efficacy of the notice plan and is considered a best practice among media planners and class action notice experts alike. Using proxy audiences is also commonplace in both class action litigation and advertising generally.[4]

---

[3] GfK MediaMark Research and Intelligence LLC ("GfK MRI") provides demographic, brand preference and media-use habits, and captures in-depth information on consumer media choices, attitudes, and consumption of products and services in nearly 600 categories. comSCORE, Inc. ("comSCORE") is a leading cross-platform measurement and analytics company that precisely measures audiences, brands, and consumer behavior, capturing 1.9 trillion global interactions monthly. comSCORE's proprietary digital audience measurement methodology allows marketers to calculate audience reach in a manner not affected by variables such as cookie deletion and cookie blocking/rejection, allowing these audiences to be reach more effectively. comSCORE operates in more than 75 countries, including the United States, serving over 3,200 clients worldwide.

[4] If the total population base (or number of class members) is unknown, it is accepted advertising and communication practice to use a proxy-media definition, which is based on accepted media research tools and methods that will allow the notice expert to establish that number. The percentage of the population reached by supporting media can then be established. Duke Law School, GUIDELINES AND BEST PRACTICES IMPLEMENTING 2018 AMENDMENTS TO RULE 23 CLASS ACTION SETTLEMENT PROVISIONS, at 56.

33.     Additionally, the Target Audience is based on objective syndicated data, which is routinely used by advertising agencies and experts to understand the demographics, shopping habits and attitudes of the consumers that they are seeking to reach.[5] Using this form of objective data will allow the parties to report the reach and frequency to the Court, with the confidence that the reach percentage and the number of exposure opportunities complies with due process, and exceeds the Federal Judicial Center's threshold as to reasonableness in notification programs. Virtually all professional advertising agencies and commercial media departments use objective syndicated data tools, like the ones described above, to quantify net reach. Sources like these guarantee that advertising placements can be measured against an objective basis and confirm that reporting statistics are not overstated. Objective syndicated data tools are ubiquitous tools in a media planner's arsenal and are regularly accepted by courts in evaluating the efficacy of a media plan, or its component parts.

34.     Understanding the socio-economic characteristics, interests, and practices of a target group aids in the proper selection of media to reach that audience. Based on data from 2023 comScore Multi-Platform/MRI Simmons USA Fusion, the Target Audience has been reported to have the characteristics below.[6]

- 59.87% are ages 45+, with a median age of 51.1 years old;
- 100% are female;
- 47.17% are married;
- 35.95% have children;
- 25.98% have received a bachelor's or post-graduate degree;
- 40.75% are currently employed full time;
- The median household income is $54,340; and
- 85.15% have used social media in the last 30 days.

35.     To identify the best vehicles to deliver messaging to the Target Audience, the media quintiles, which measure the degree to which an audience uses media relative to the general population were reviewed. Here, the objective syndicated data shows that members of the Target Audience are

---

[5] The notice plan should include an analysis of the makeup of the class. The target audience should be defined and quantified. This can be established through using a known group of customers, or it can be based on a proxy-media definition. Both methods have been accepted by the courts and, more generally, by the advertising industry, to determine a population base. *Id* at 56.

[6] While these characteristics are informative and aid in advertisement delivery, industry standard best practices are utilized to ensure that advertisements are delivered to the most accurate audiences.

consistent internet users, spending an average of 29.6 hours per week on the internet.

36.     Given the strength of digital advertising, as well as our Target Audience's consistent internet use, we recommend utilizing a robust internet advertising campaign to reach Class Members.

37.     Multiple targeting layers will be implemented into the programmatic campaign to help ensure delivery to the most appropriate users, inclusive of the following tactics:

- <u>Look-a-like Modeling</u>: This technique uses data methods to build a look-a-like audience against known Class Members.
- <u>Predictive Targeting</u>: This technique allows technology to "predict" which users will be served advertisement about the Settlement.
- Context Targeting: This technique leverages contextual on-site data to surround our messaging (*i.e.*, advertisements about the Settlement) on sites with relevant topics and/or articles.
- <u>Site Retargeting</u>: This technique is a targeting method used to reach potential Class Members who have already visited the dedicated Settlement Website while they browse other pages. This allows for sufficient exposure to advertisements about the Settlement.
- <u>Geotargeting</u>: The campaign will be targeted nationwide with a weighted delivery based on how the Target Audience is geographically spread throughout the country.

38.     To combat the possibility of non-human viewership of digital advertisements and to verify effective unique placements, Angeion employs Oracle's BlueKai, Adobe's Audience Manger and/or Lotame, which are demand management platforms ("DMP"). DMPs allow Angeion to learn more about the online audiences that are being reached. Further, online ad verification and security providers such as Comscore Content Activation, DoubleVerify, Grapeshot, Peer39 and Moat will be deployed to provide a higher quality of service to ad performance.

**Social Media Advertising**

39.     The social media campaign component of the proposed Notice Plan will utilize Facebook and Instagram, two of the leading social media platforms in the United States,[7] to reach potential Class Members. The social media campaign capitalizes on the Target Audience's propensity to engage in social media (85.15% of the Target Audience have used social media in the last 30 days).

---

[7] In the United States in 2023, Facebook had a reported 243.58 million users, Instagram had a reported 150.99 million users. *See*
https://www.statista.com/statistics/408971/number-of-us-facebook-users (Last visited February 2, 2024)
https://www.statista.com/statistics/293771/number-of-us-instagram-users (Last visited February 2, 2024)

40.     The social media campaigns will coincide with the programmatic display advertising and will engage with Target Audience members utilizing strategic tactics to further qualify and deliver impressions to the Target Audience. For example, look-a-like modeling allows the use of consumer characteristics to serve advertisements. Based on these characteristics, we can also build different consumer profile segments to ensure the notice plan messaging is delivered to the proper audience. The social media ads will be targeted nationwide. If sufficient data is available, the campaign will leverage a weighted delivery based on the geographic spread of the Target Audience throughout the country.

41.     The social media campaigns will use the Facebook Marketing platform and its technology to serve ads on both Facebook and Instagram against the Target Audience via a mix of news feed and story units to optimize performance via the social media platforms' desktop sites, mobile sites, and mobile apps.

**Search Engine Marketing**

42.     The Notice Plan also includes a paid search campaign on Google to help drive Class Members who are actively searching for information about the lawsuit to the Settlement Website. Paid search ads will complement the programmatic and social media campaigns, as search engines are frequently used to locate a specific website, rather than a person typing in the URL. Search terms would relate to not only the Settlement itself but also the subject-matter of the litigation. In other words, the paid search ads are driven by the individual user's search activity, such that if that individual searches for (or has recently searched for) the lawsuit, litigation or other terms related to the Settlement, that individual could be served with an advertisement directing them to the Settlement Website.

### SETTLEMENT WEBSITE & TOLL-FREE TELEPHONE SUPPORT

43.     The Notice Plan will also implement the creation of a dedicated Settlement Website, where Class Members can easily view general information about Settlement, review relevant Court documents, such as the Settlement Agreement, Complaint(s), Court Orders, as well as the notices[8] and claim form, and view important dates and deadlines pertinent to the Settlement. Class Members

---

[8] Class Members will be able to print or download the notices in English and Spanish.

can also send an email with any additional questions to a dedicated email address. The Settlement Website will also allow Class Members to securely submit claim forms and upload supporting documentation via an online claim portal. Class Members will also be able to submit an exclusion request via the Settlement Website.

44.     The Settlement Website will be designed to be ADA-compliant and optimized for mobile visitors so that information loads quickly on mobile devices. Additionally, the Settlement Website will be designed to maximize search engine optimization through Google and other search engines. Keywords and natural language search terms will be included in the Settlement Website's metadata to maximize search engine rankings.

45.     A toll-free hotline devoted to this case will be implemented to further apprise Class Members of their rights and options pursuant to the terms of the Settlement. The toll-free hotline will utilize an interactive voice response ("IVR") system to provide Class Members with responses to frequently asked questions and provide essential information regarding the class action. This hotline will be accessible 24 hours a day, 7 days a week.

46.     Additionally, Class Members can leave a message through the toll-free hotline to request that a copy of the Notice and/or claim form be mailed to them.

### NOTICE PURSUANT TO THE CLASS ACTION FAIRNESS ACT OF 2005

47.     Within ten days of the filing of the Settlement Agreement with this Court, Angeion will cause notice to be disseminated to the appropriate state and federal officials pursuant to the requirements of the Class Action Fairness Act, 28 U.S.C. §1715.

### FRAUD DETECTION

48.     Angeion has developed and deployed a real-time fraud detection system, AngeionAffirm, which is the first and only comprehensive solution to identify fraud in real time based on both state-of-the-art technology and analysis of over a decade of historical claims data.[9] AngeionAffirm was developed to combat the rising tide of fraudulent claims in class action settlements and the

---

[9] https://www.prnewswire.com/news-releases/angeion-group-introduces-first-of-its-kind-real-time-fraud-detection-system-301946263.html?tc=eml_cleartime  (Last visited February 2, 2024)

increasingly sophisticated technologies and techniques used by fraudulent actors in their attempt to perpetuate fraud.[10]

49. Key highlights of AngeionAffirm include: (1) The implementation of enhanced, machine learning based fraud prevention mechanisms on all Web Application Firewalls focused on detecting and blocking fraudulent activities even before they infiltrate the system; (2) Employing advanced artificial intelligence to identify bot and scripted browser traffic; (3) Performing proprietary behavioral analysis techniques to identify abnormal patterns that could indicate fraudulent submissions, to help ensure that claims are genuine and justifiable; (4) Analyzing a broad array of technical characteristics garnered from claimant email addresses and other digital fingerprints to determine a claim's propensity for fraud; (5) Deploying a dynamic IP monitoring system to identify and flag suspicious activities across all case engagements; (6) Analysis of over one hundred million claims, which has proven instrumental in identifying characteristics, anomalies, and known bad actors, that may signify fraudulent intent, thus ensuring only bona fide claims are approved; and (7) Utilization of multiple security measures to address the increasing scale and sophistication of cyber criminals' adaptive behavior.

50. AngeionAffirm will be implemented to detect fraudulent claim submissions in this Settlement as part of the ongoing, comprehensive anti-fraud efforts.

51. In addition to AngeionAffirm, Angeion maintains a robust, multi-tiered detection system to identify duplicate claims submissions. By way of example, we employ an elaborate technical process to identify potential claim duplication using a series of database-driven searches to find duplicate names and addresses in our claims database. Normally, both the claimant's name and associated nicknames are analyzed, as well as the corresponding standardized addresses, for purposes of claim duplication detection. Additional data points may be used depending on the information available.

**REACH AND FREQUENCY**

---

[10] https://www.law.com/newyorklawjournal/2023/07/26/the-increasing-danger-of-fraudulent-claims-in-class-action-settlements/ (Last visited February 2, 2024)

52.     This declaration describes the reach and frequency evidence which courts systemically rely upon in reviewing class action publication notice programs for adequacy. The Notice Plan's designed reach percentage exceeds the guidelines as set forth in the Federal Judicial Center's Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide to effectuate a notice program which reaches a high degree of class members.

53.     Specifically, the comprehensive media plan is designed to deliver an approximate 75.15% reach with an average frequency of 3.08 times each by serving approximately 15.9 million impressions.  The 75.15% reach is separate and apart from, and in addition to the email notice, dedicated Settlement Website, and toll-free telephone support.

## CONCLUSION

54.     The Notice Plan outlined above includes a robust media campaign consisting of state-of-the-art internet advertising, a comprehensive social media campaign, and search engine marketing to provide notice to potential Class Members. Further, the Notice Plan provides for the implementation of a dedicated Settlement Website and toll-free telephone support to further inform Class Members of their rights and options pursuant to terms of the Settlement. Direct notice will also be sent via email to Class Members whose email addresses are provided to Angeion.

55.     In my professional opinion, the Notice Plan described herein will provide full and proper notice to Class Members before the applicable exclusion, objection and claim form deadlines. Moreover, it is my opinion that Notice Plan is the best notice that is practicable under the circumstances, fully comports with due process, and Fed. R. Civ. P. 23.  After the Notice Plan has concluded, Angeion will provide a final report verifying its effective implementation to this Court.

I hereby declare under penalty of perjury that the foregoing is true and correct.

Dated:  February 29, 2024

STEVEN WEISBROT

Declaration of Steven Weisbrot re: Proposed Notice Plan

14

# Exhibit A



# **INNOVATION**
## IT'S PART OF OUR DNA

**Class Action Administration | Mass Arbitration Administration**
**Mass Tort Services | Regulatory Remediation**



## Judicial Recognition

© Angeion Group, LLC

**ANGEION GROUP**
Writing the Rules

## IN RE: FACEBOOK, INC. CONSUMER PRIVACY USER PROFILE LITIGATION
**Case No. 3:18-md-02843 (N.D. Cal.)**

The Honorable Vincent Chhabria (March 29, 2023): The Court approves the Settlement Administration Protocol & Notice Plan, amended Summary Notice (Dkt. No. 1114-8), second amended Class Notice (Dkt. No. 1114-6), In-App Notice, amended Claim Form (Dkt. No. 1114-2), Opt-Out Form (Dkt. No. 1122-1), and Objection Form (Dkt. No. 1122-2) and finds that their dissemination substantially in the manner and form set forth in the Settlement Agreement and the subsequent filings referenced above meets the requirements of Federal Rule of Civil Procedure 23 and due process, constitutes the best notice practicable under the circumstances, and is reasonably calculated, under the circumstances, to apprise members of the Settlement Class of the pendency of the Action, the effect of the proposed Settlement (including the releases contained therein), the anticipated motion for Attorneys' Fees and Expenses Award and for Service Awards, and their rights to participate in, opt out of, or object to any aspect of the proposed Settlement.

## IN RE: KIA HYUNDAI VEHICLE THEFT MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION
**Case No. 8:22-ml-03052 (C.D. Cal.)**

The Honorable James V. Selna (October 31, 2023): The Court has considered the form and content of the Class notice program and finds that the Class notice program and methodology as described in the Settlement Agreement (a) meet the requirements of due process and Federal Rules of Civil Procedure 23(c) and (e); (b) constitute the best notice practicable under the circumstances to all persons entitled to notice; and (c) satisfies the constitutional requirements regarding notice.

## IN RE: PHILLIPS RECALLED CPAP, BI-LEVEL PAP, AND MECHANICAL VENTILATOR PRODUCTS LITIGATION
**Case No. 2:21-mc-01230 (MDL No. 3014) (W.D. Pa.)**

The Honorable Joy Flowers Conti (October 10, 2023): The Court finds that the method of giving notice to the Settlement Class ("Notice Plan")...(a) constitute the best notice practicable under the circumstances, (b) are reasonably calculated, under the circumstances, to apprise the Settlement Class Members of the pendency of the Action, the terms and benefits of the proposed Settlement...(c) are reasonable and constitute due, adequate, and sufficient notice to all Settlement Class Members and any other persons entitled to receive notice, (d) meet all applicable requirements of law, including, but not limited to, 28 U.S.C. § 1715, Rule 23(c), the Due Process Clause(s) of the United States Constitution, and any other applicable laws...

## IN RE: AQUEOUS FILM-FORMING FOAMS PRODUCTS LIABILITY LITIGATION
**Case No. 2:18-mn-02873 (D.S.C.)**

The Honorable Richard Mark Gergel (August 29, 2023): The Court also approves the proposed Notice Plan set forth in Exhibit C to the Settlement Agreement. The Court finds that the proposal for (i) direct mailing of the Notice, as well as emailing of the Summary Notice, to each known Class Member, (ii) personalized outreach to national and local water organizations, (iii) national publication of the Summary Notice and a media campaign targeting all Active Public Water Systems that may potentially meet the qualifications to become Class Members, and (iv) a website that potential Class Members will be directed to displaying a long-form Notice that sets forth the details of the proposed Settlement and provides a toll-free hotline, meets the requirements of Rule 23 and due process and shall constitute due and sufficient notice to all Persons potentially entitled to

participate in the proposed Settlement. The proposed Notice Plan is the best practicable notice under the circumstances of this case; is reasonably calculated under the circumstances to apprise potential Class Members of the Settlement Agreement and of their right to object to or exclude themselves from the proposed Settlement Class; is reasonable and constitutes due, adequate, and sufficient notice to all Persons entitled to receive it; and meets all applicable requirements of Federal Rule of Civil Procedure 23, the United States Constitution, and other applicable laws and rules.

### KUKORINIS v. WALMART, INC.

**Case No. 8:22-cv-02402 (M.D. Fla.)**

The Honorable Virginia M. Hernandez Covington (January 19, 2024): The Notice Plan, including the form of the notices and methods for notifying the Settlement Class of the Settlement and its terms and conditions…a. meet the requirements of the Federal Rules of Civil Procedure (including Rule 23 (c)-(e)), the United States Constitution (including the Due Process Clause), and the Rules of this Court; b. constitute the best notice to Settlement Class Members practicable under the circumstances…

### LE ET AL. v. ZUFFA, LLC

**Case No. 2:15-cv-01045 (D. Nev.)**

The Honorable Richard F. Boulware, II (November 17, 2023): The proposed Notice Plan, including the proposed forms and manner of notice, constitutes the best notice practicable under the circumstances and satisfies the requirements of due process and Rules 23(c)(2) and 23(e)(1) of the Federal Rules of Civil Procedure.

### AMANS v. TESLA, INC.

**Case No. 3:21-cv-03577 (N.D. Cal.)**

The Honorable Vince Chhabria (October 20, 2023): The Court further finds that the Notice is the best notice practicable under the circumstances, and that the Notice complies fully with the requirements of the Federal Rules of Civil Procedure. The Court also finds that the Notice constitutes valid, due, and sufficient notice to all persons entitled thereto, and meets the requirements of Due Process. The Court further finds that the Notice is reasonably calculated, under all circumstances, to apprise members of the Settlement Class of the pendency of this case, the terms of the Settlement Agreement, the right to object to the Settlement, and the right to exclude themselves from the Settlement Class.

### LUNDY v. META PLATFORMS, INC.

**Case No. 3:18-cv-06793 (N.D. Cal.)**

The Honorable James Donato (April 26, 2023): For purposes of Rule 23(e), the Notice Plan submitted with the Motion for Preliminary Approval and the forms of notice attached thereto are approved…The form, content, and method of giving notice to the Settlement Class as described in the Notice Plan submitted with the Motion for Preliminary Approval are accepted at this time as practicable and reasonable in light of the rather unique circumstances of this case.

ANGEION GROUP
Writing the Rules

## IN RE: APPLE INC. DEVICE PERFORMANCE LITIGATION
**Case No. 5:18-md-02827 (N.D. Cal.)**

The Honorable Edward J. Davila (March 17, 2021): Angeion undertook a comprehensive notice campaign…The notice program was well executed, far-reaching, and exceeded both Federal Rule of Civil Procedure 23(c)(2)(B)'s requirement to provide the "best notice that is practicable under the circumstances" and Rule 23(e)(1)(B)'s requirement to provide "direct notice in a reasonable manner."

## IN RE: TIKTOK, INC., CONSUMER PRIVACY LITIGATION
**Case No. 1:20-cv-04699 (N.D. Ill.)**

The Honorable John Z. Lee (August 22, 2022): The Class Notice was disseminated in accordance with the procedures required by the Court's Order Granting Preliminary Approval…in accordance with applicable law, satisfied the requirements of Rule 23(e) and due process, and constituted the best notice practicable…

## IN RE: GOOGLE PLUS PROFILE LITIGATION
**Case No. 5:18-cv-06164 (N.D. Cal.)**

The Honorable Edward J. Davila (January 25, 2021):  The Court further finds that the program for disseminating notice to Settlement Class Members provided for in the Settlement, and previously approved and directed by the Court (hereinafter, the "Notice Program"), has been implemented by the Settlement Administrator and the Parties, and such Notice Program, including the approved forms of notice, is reasonable and appropriate and satisfies all applicable due process and other requirements, and constitutes best notice reasonably calculated under the circumstances to apprise Settlement Class Members…

## MEHTA v. ROBINHOOD FINANCIAL LLC
**Case No. 5:21-cv-01013 (N.D. Cal.)**

The Honorable Susan van Keulen (August 29, 2022): The proposed notice plan, which includes direct notice via email, will provide the best notice practicable under the circumstances. This plan and the Notice are reasonably calculated, under the circumstances, to apprise Class Members of the nature and pendency of the Litigation, the scope of the Settlement Class, a summary of the class claims, that a Class Member may enter an appearance through an attorney, that the Court will grant timely exclusion requests, the time and manner for requesting exclusion, the binding effect of final approval of the proposed Settlement, and the anticipated motion for attorneys' fees, costs, and expenses and for service awards. The plan and the Notice constitute due, adequate, and sufficient notice to Class Members and satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure, due process, and all other applicable laws and rules.

## ADTRADER, INC. v. GOOGLE LLC
**Case No. 5:17-cv-07082 (N.D. Cal.)**

The Honorable Beth L. Freeman (May 13, 2022):  The Court approves, as to form, content, and distribution, the Notice Plan set forth in the Settlement Agreement, including the Notice Forms attached to the Weisbrot Declaration, subject to the Court's one requested change as further described in Paragraph 8 of this Order, and finds that such Notice is the best notice practicable under the circumstances, and that the Notice complies fully with the requirements of the Federal Rules of Civil Procedure. The Court further finds that the Notice is reasonably calculated to, under

all circumstances, reasonably apprise members of the AdWords Class of the pendency of this Action, the terms of the Settlement Agreement, and the right to object to the Settlement and to exclude themselves from the AdWords Class. The Court also finds that the Notice constitutes valid, due and sufficient notice to all persons entitled thereto, and meets the requirements of Due Process. The Court further finds that the Notice Plan fully complies with the Northern District of California's Procedural Guidance for Class Action Settlements.

## IN RE: FACEBOOK INTERNET TRACKING LITIGATION
### Case No. 5:12-md-02314 (N.D. Cal.)

The Honorable Edward J. Davila (November 10, 2022): The Court finds that Plaintiffs' notice meets all applicable requirements of due process and is particularly impressed with Plaintiffs' methodology and use of technology to reach as many Class Members as possible. Based upon the foregoing, the Court finds that the Settlement Class has been provided adequate notice.

## CITY OF LONG BEACH v. MONSANTO COMPANY
### Case No. 2:16-cv-03493 (C.D. Cal.)

The Honorable Fernando M. Olguin (March 14, 2022): The court approves the form, substance, and requirements of the class Notice, (Dkt.278-2, Settlement Agreement, Exh. I). The proposed manner of notice of the settlement set forth in the Settlement Agreement constitutes the best notice practicable under the circumstances and complies with the requirements of due process.

## STEWART v. LEXISNEXIS RISK DATA RETRIEVAL SERVICES, LLC
### Case No. 3:20-cv-00903 (E.D. Va.)

The Honorable John A. Gibney Jr. (February 25, 2022): The proposed forms and methods for notifying the proposed Settlement Class Members of the Settlement and its terms and conditions meet the requirements of Fed. R. Civ. P. 23(c)(2)(B) and due process, constitute the best notice practicable under the circumstances, and shall constitute due and sufficient notice to all persons and entities entitled to notice...Based on the foregoing, the Court hereby approves the notice plans developed by the Parties and the Settlement Administrator and directs that they be implemented according to the Agreement and the notice plans attached as exhibits.

## WILLIAMS v. APPLE INC.
### Case No. 3:19-cv-04700 (N.D. Cal.)

The Honorable Laurel Beeler (February 24, 2022): The Court finds the Email Notice and Website Notice (attached to the Agreement as Exhibits 1 and 4, respectively), and their manner of transmission, implemented pursuant to the Agreement (a) are the best practicable notice, (b) are reasonably calculated, under the circumstances, to apprise the Subscriber Class of the pendency of the Action and of their right to object to or to exclude themselves from the proposed settlement, (c) are reasonable and constitute due, adequate and sufficient notice to all persons entitled to receive notice, and (d) meet all requirements of applicable law.

## CLEVELAND v. WHIRLPOOL CORPORATION
### Case No. 0:20-cv-01906 (D. Minn.)

The Honorable Wilhelmina M. Wright (December 16, 2021): It appears to the Court that the proposed Notice Plan described herein, and detailed in the Settlement Agreement, comports with

due process, Rule 23, and all other applicable law. Class Notice consists of email notice and postcard notice when email addresses are unavailable, which is the best practicable notice under the circumstances…The proposed Notice Plan complies with the requirements of Rule 23, Fed. R. Civ. P., and due process, and Class Notice is to be sent to the Settlement Class Members as set forth in the Settlement Agreement and pursuant to the deadlines above.

### RASMUSSEN V. TESLA, INC. D/B/A TESLA MOTORS, INC.

**Case No. 5:19-cv-04596 (N.D. Cal.)**

The Honorable Beth Labson Freeman (December 10, 2021): The Court has carefully considered the forms and methods of notice to the Settlement Class set forth in the Settlement Agreement ("Notice Plan"). The Court finds that the Notice Plan constitutes the best notice practicable under the circumstances and fully satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure, the requirements of due process, and the requirements of any other applicable law, such that the terms of the Settlement Agreement, the releases provided for therein, and this Court's final judgment will be binding on all Settlement Class Members.

### CAMERON V. APPLE INC.

**Case No. 4:19-cv-03074 (N.D. Cal.)**

The Honorable Yvonne Gonzalez Rogers (November 16, 2021): The parties' proposed notice plan appears to be constitutionally sound in that plaintiffs have made a sufficient showing that it is: (i) the best notice practicable; (ii) reasonably calculated, under the circumstances, to apprise the Class members of the proposed settlement and of their right to object or to exclude themselves as provided in the settlement agreement; (iii) reasonable and constitute due, adequate, and sufficient notice to all persons entitled to receive notice; and (iv) meet all applicable requirements of due process and any other applicable requirements under federal law.

### RISTO V. SCREEN ACTORS GUILD - AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS ET AL.

**Case No. 2:18-cv-07241 (C.D. Cal.)**

The Honorable Christina A. Snyder (November 12, 2021):  The Court approves the publication notice plan presented to this Court as it will provide notice to potential class members through a combination of traditional and digital media that will consist of publication of notice via press release, programmatic display digital advertising, and targeted social media, all of which will direct Class Members to the Settlement website…The notice plan satisfies any due process concerns as this Court certified the class under Federal Rule of Civil Procedure 23(b)(1)…

### JENKINS V. NATIONAL GRID USA SERVICE COMPANY, INC.

**Case No. 2:15-cv-01219 (E.D.N.Y.)**

The Honorable Joanna Seybert (November 8, 2021):  Pursuant to Fed. R. Civ. P. 23(e)(1) and 23(c)(2)(B), the Court approves the proposed Notice Plan and procedures set forth at Section 8 of the Settlement, including the form and content of the proposed forms of notice to the Settlement Class attached as Exhibits C-G to the Settlement and the proposed procedures for Settlement Class Members to exclude themselves from the Settlement Class or object. The Court finds that the proposed Notice Plan meets the requirements of due process under the United States Constitution and Rule 23, and that such Notice Plan—which includes direct notice to Settlement Class Members

sent via first class U.S. Mail and email; the establishment of a Settlement Website (at the URL, www.nationalgridtcpasettlement.com) where Settlement Class Members can view the full settlement agreement, the detailed long-form notice (in English and Spanish), and other key case documents; publication notice in forms attached as Exhibits E and F to the Settlement sent via social media (Facebook and Instagram) and streaming radio (e.g., Pandora and iHeart Radio). The Notice Plan shall also include a paid search campaign on search engine(s) chosen by Angeion (e.g., Google) in the form attached as Exhibits G and the establishment of a toll-free telephone number where Settlement Class Members can get additional information—is the best notice practicable under the circumstances and shall constitute due and sufficient notice to all persons entitled thereto.

### NELLIS v. VIVID SEATS, LLC

**Case No. 1:20-cv-02486 (N.D. Ill.)**

The Honorable Robert M. Dow, Jr. (November 1, 2021):  The Notice Program, together with all included and ancillary documents thereto, (a) constituted reasonable notice; (b) constituted notice that was reasonably calculated under the circumstances to apprise members of the Settlement Class of the pendency of the Litigation…(c) constituted reasonable, due, adequate and sufficient notice to all Persons entitled to receive notice; and (d) met all applicable requirements of due process and any other applicable law. The Court finds that Settlement Class Members have been provided the best notice practicable of the Settlement and that such notice fully satisfies all requirements of law as well as all requirements of due process.

### PELLETIER v. ENDO INTERNATIONAL PLC

**Case No. 2:17-cv-05114 (E.D. Pa.)**

The Honorable Michael M. Baylson (October 25, 2021): The Court approves, as to form and content, the Notice of Pendency and Proposed Settlement of Class Action (the "Notice"), the Proof of Claim and Release form (the "Proof of Claim"), and the Summary Notice, annexed hereto as Exhibits A-1, A-2, and A-3, respectively, and finds that the mailing and distribution of the Notice and publishing of the Summary Notice, substantially in the manner and form set forth in ¶¶7-10 of this Order, meet the requirements of Rule 23 and due process, and is the best notice practicable under the circumstances and shall constitute due and sufficient notice to all Persons entitled thereto.

### BIEGEL v. BLUE DIAMOND GROWERS

**Case No. 7:20-cv-03032 (S.D.N.Y.)**

The Honorable Cathy Seibel (October 25, 2021):  The Court finds that the Notice Plan, set forth in the Settlement Agreement and effectuated pursuant to the Preliminary Approval Order: (i) was the best notice practicable under the circumstances; (ii) was reasonably calculated to provide, and did provide, due and sufficient notice to the Settlement Class regarding the existence and nature of the Action…and (iii) satisfied the requirements of the Federal Rules of Civil Procedure, the United States Constitution, and all other applicable law.

### QUINTERO v. SAN DIEGO ASSOCIATION OF GOVERNMENTS

**Case No. 37-2019-00017834-CU-NP-CTL (Cal. Super. Ct.)**

The Honorable Eddie C. Sturgeon (September 27, 2021):  The Court has reviewed the class notices for the Settlement Class and the methods for providing notice and has determined that the parties will employ forms and methods of notice that constitute the best notice practicable under the circumstances; are reasonably calculated to apprise class members of the terms of the Settlement

and of their right to participate in it, object, or opt-out; are reasonable and constitute due, adequate, and sufficient notice to all persons entitled to receive notice; and meet all constitutional and statutory requirements, including all due process requirements and the California Rules of Court.

## HOLVE v. MCCORMICK & COMPANY, INC.
### Case No. 6:16-cv-06702 (W.D.N.Y.)
The Honorable Mark W. Pedersen (September 23, 2021): The Court finds that the form, content and method of giving notice to the Class as described in the Settlement Agreement and the Declaration of the Settlement Administrator: (a) will constitute the best practicable notice; (b) are reasonably calculated, under the circumstances, to apprise the Settlement Class Members of the pendency of the Action…(c) are reasonable and constitute due, adequate, and sufficient notice to all Settlement Class Members and other persons entitled to receive notice; and (d) meet all applicable requirements of law, including but not limited to 28 U.S.C. § 1715, Rule 23(c) and (e), and the Due Process Clause(s) of the United States Constitution.

## CULBERTSON ET AL. v. DELOITTE CONSULTING LLP
### Case No. 1:20-cv-03962 (S.D.N.Y.)
The Honorable Lewis J. Liman (August 27, 2021): The notice procedures described in the Notice Plan are hereby found to be the best means of providing notice under the circumstances and, when completed, shall constitute due and sufficient notice of the proposed Settlement Agreement and the Final Approval Hearing to all persons affected by and/or entitled to participate in the Settlement Agreement, in full compliance with the notice requirements of Rule 23 of the Federal Rules of Civil Procedure and due process of law.

## PULMONARY ASSOCIATES OF CHARLESTON PLLC v. GREENWAY HEALTH, LLC
### Case No. 3:19-cv-00167 (N.D. Ga.)
The Honorable Timothy C. Batten, Sr. (August 24, 2021): Under Rule 23(c)(2), the Court finds that the content, format, and method of disseminating Notice, as set forth in the Motion, the Declaration of Steven Weisbrot filed on July 2, 2021, and the Settlement Agreement and Release, including notice by First Class U.S. Mail and email to all known Class Members, is the best notice practicable under the circumstances and satisfies all requirements provided in Rule 23(c)(2)(B) and due process.

## IN RE: BROILER CHICKEN GROWER ANTITRUST LITIGATION (NO II)
### Case No. 6:20-md-02977 (E.D. Okla.)
The Honorable Robert J. Shelby (August 23, 2021): The Court approves the method of notice to be provided to the Settlement Class as set forth in Plaintiffs' Motion and Memorandum of Law in Support of Motion for Approval of the Form and Manner of Class Notice and Appointment of Settlement Administrator and Request for Expedited Treatment and the Declaration of Steven Weisbrot on Angeion Group Qualifications and Proposed Notice Plan…The Court finds and concludes that such notice: (a) is the best notice that is practicable under the circumstances, and is reasonably calculated to reach the members of the Settlement Class and to apprise them of the Action, the terms and conditions of the Settlement, their right to opt out and be excluded from the Settlement Class, and to object to the Settlement; and (b) meets the requirements of Federal Rule of Civil Procedure 23 and due process.

## ROBERTS ET AL. V. AT&T MOBILITY, LLC
### Case No. 3:15-cv-03418 (N.D. Cal.)

The Honorable Edward M. Chen (August 20, 2021): The Court finds that such Notice program, including the approved forms of notice: (a) constituted the best notice that is practicable under the circumstances; (b) included direct individual notice to all Settlement Class Members who could be identified through reasonable effort, as well as supplemental notice via a social media notice campaign and reminder email and SMS notices; (c) constituted notice that was reasonably calculated, under the circumstances, to apprise Settlement Class Members of the nature of this Action ...(d) constituted due, adequate and sufficient notice to all persons entitled to notice; and (e) met all applicable requirements of Federal Rule of Civil Procedure 23, Due Process under the U.S. Constitution, and any other applicable law.

## PYGIN V. BOMBAS, LLC
### Case No. 4:20-cv-04412 (N.D. Cal.)

The Honorable Jeffrey S. White (July 12, 2021): The Court also concludes that the Class Notice and Notice Program set forth in the Settlement Agreement satisfy the requirements of due process and Rule 23 and provide the best notice practicable under the circumstances. The Class Notice and Notice Program are reasonably calculated to apprise Settlement Class Members of the nature of this Litigation, the Scope of the Settlement Class, the terms of the Settlement Agreement, the right of Settlement Class Members to object to the Settlement Agreement or exclude themselves from the Settlement Class and the process for doing so, and of the Final Approval Hearing. Accordingly, the Court approves the Class Notice and Notice Program and the Claim Form.

## WILLIAMS ET AL. V. RECKITT BENCKISER LLC ET AL.
### Case No. 1:20-cv-23564 (S.D. Fla.)

The Honorable Jonathan Goodman (April 23, 2021): The Court approves, as to form and content, the Class Notice and Internet Notice submitted by the parties (Exhibits B and D to the Settlement Agreement or Notices substantially similar thereto) and finds that the procedures described therein meet the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process, and provide the best notice practicable under the circumstances. The proposed Class Notice Plan -- consisting of (i) internet and social media notice; and (ii) notice via an established Settlement Website -- is reasonably calculated to reach no less than 80% of the Settlement Class Members.

## NELSON ET AL. V. IDAHO CENTRAL CREDIT UNION
### Case No. CV03-20-00831, CV03-20-03221 (Idaho Jud. Dist.)

The Honorable Robert C. Naftz (January 19, 2021): The Court finds that the Proposed Notice here is tailored to this Class and designed to ensure broad and effective reach to it...The Parties represent that the operative notice plan is the best notice practicable and is reasonably designed to reach the settlement class members. The Court agrees.

## IN RE: HANNA ANDERSSON AND SALESFORCE.COM DATA BREACH LITIGATION
### Case No. 3:20-cv-00812 (N.D. Cal.)

The Honorable Edward M. Chen (December 29, 2020): The Court finds that the Class Notice and Notice Program satisfy the requirements of due process and Rule 23 of the Federal Rules of Civil Procedure and provide the best notice practicable under the circumstances.

### IN RE: PEANUT FARMERS ANTITRUST LITIGATION

**Case No. 2:19-cv-00463 (E.D. Va.)**

The Honorable Raymond A. Jackson (December 23, 2020): The Court finds that the Notice Program…constitutes the best notice that is practicable under the circumstances and is valid, due and sufficient notice to all persons entitled thereto and complies fully with the requirements of Rule 23(c)(2) and the due process requirements of the Constitution of the United States.

### BENTLEY ET AL. V. LG ELECTRONICS U.S.A., INC.

**Case No. 2:19-cv-13554 (D.N.J.)**

The Honorable Madeline Cox Arleo (December 18, 2020): The Court finds that notice of this Settlement was given to Settlement Class Members in accordance with the Preliminary Approval Order and constituted the best notice practicable of the proceedings and matters set forth therein, including the Litigation, the Settlement, and the Settlement Class Members' rights to object to the Settlement or opt out of the Settlement Class, to all Persons entitled to such notice, and that this notice satisfied the requirements of Federal Rule of Civil Procedure 23 and of due process.

### IN RE: ALLURA FIBER CEMENT SIDING PRODUCTS LIABILITY LITIGATION

**Case No. 2:19-mn-02886 (D.S.C.)**

The Honorable David C. Norton (December 18, 2020): The proposed Notice provides the best notice practicable under the circumstances. It allows Settlement Class Members a full and fair opportunity to consider the proposed settlement. The proposed plan for distributing the Notice likewise is a reasonable method calculated to reach all members of the Settlement Class who would be bound by the settlement. There is no additional method of distribution that would be reasonably likely to notify Settlement Class Members who may not receive notice pursuant to the proposed distribution plan.

### ADKINS ET AL. V. FACEBOOK, INC.

**Case No. 3:18-cv-05982 (N.D. Cal.)**

The Honorable William Alsup (November 15, 2020): Notice to the class is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Tr. Co., 399 U.S. 306, 314 (1650).*

### IN RE: 21ST CENTURY ONCOLOGY CUSTOMER DATA SECURITY BREACH LITIGATION

**Case No. 8:16-md-02737 (M.D. Fla.)**

The Honorable Mary S. Scriven (November 2, 2020): The Court finds and determines that mailing the Summary Notice and publication of the Settlement Agreement, Long Form Notice, Summary Notice, and Claim Form on the Settlement Website, all pursuant to this Order, constitute the best notice practicable under the circumstances, constitute due and sufficient notice of the matters set forth in the notices to all persons entitled to receive such notices, and fully satisfies the of due process, Rule 23 of the Federal Rules of Civil Procedure, 28 U.S.C. § 1715, and all other applicable laws and rules. The Court further finds that all of the notices are written in plain language and are readily understandable by Class Members.

**MARINO** ET AL. V. **COACH INC.**

**Case No. 1:16-cv-01122 (S.D.N.Y.)**

The Honorable Valerie Caproni (August 24, 2020):  The Court finds that the form, content, and method of giving notice to the Settlement Class as described in paragraph 8 of this Order: (a) will constitute the best practicable notice; (b) are reasonably calculated, under the circumstances, to apprise the Settlement Class Members of the pendency of the Action, the terms of the proposed Settlement, and their rights under the proposed Settlement, including but not limited to their rights to object to or exclude themselves from the proposed Settlement and other rights under the terms of the Settlement Agreement; (c) are reasonable and constitute due, adequate, and sufficient notice to all Settlement Class Members and other persons entitled to receive notice; and (d) meet all applicable requirements of law, including but not limited to 28 U.S.C. § 1715, Rule 23(c) and (e), and the Due Process Clause(s) of the United States Constitution.  The Court further finds that all of the notices are written in plain language, are readily understandable by Settlement Class Members, and are materially consistent with the Federal Judicial Center's illustrative class action notices.

**BROWN** V. **DIRECTV, LLC**

**Case No. 2:13-cv-01170 (C.D. Cal.)**

The Honorable Dolly M. Gee (July 23, 2020):  Given the nature and size of the class, the fact that the class has no geographical limitations, and the sheer number of calls at issue, the Court determines that these methods constitute the best and most reasonable form of notice under the circumstances.

**IN RE: SSA BONDS ANTITRUST LITIGATION**

**Case No. 1:16-cv-03711 (S.D.N.Y.)**

The Honorable Edgardo Ramos (July 15, 2020): The Court finds that the mailing and distribution of the Notice and the publication of the Summary Notice substantially in the manner set forth below meet the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process and constitute the best notice practicable under the circumstances, and shall constitute due and sufficient notice to all Persons entitled to notice.

**KJESSLER** ET AL. V. **ZAAPPAAZ, INC.** ET AL.

**Case No. 4:18-cv-00430 (S.D. Tex.)**

The Honorable Nancy F. Atlas (July 14, 2020): The Court also preliminarily approves the proposed manner of communicating the Notice and Summary Notice to the putative Settlement Class, as set out below, and finds it is the best notice practicable under the circumstances, constitutes due and sufficient notice to all persons and entities entitled to receive such notice, and fully satisfies the requirements of applicable laws, including due process and Federal Rule of Civil Procedure 23.

**HESTER** ET AL. V. **WALMART, INC.**

**Case No. 5:18-cv-05225 (W.D. Ark.)**

The Honorable Timothy L. Brooks (July 9, 2020): The Court finds that the Notice and Notice Plan substantially in the manner and form set forth in this Order and the Agreement meet the requirements of Federal Rule of Civil Procedure 23 and due process, is the best notice practicable under the circumstances, and shall constitute due and sufficient notice to all Persons entitled thereto.

**CLAY** ET AL. V. **CYTOSPORT INC.**

**Case No. 3:15-cv-00165 (S.D. Cal.)**

The Honorable M. James Lorenz (June 17, 2020): The Court approves the proposed Notice Plan for giving notice to the Settlement Class through publication, both print and digital, and through the establishment of a Settlement Website, as more fully described in the Agreement and the Claims Administrator's affidavits (docs. no. 222-9, 224, 224-1, and 232-3 through 232-6). The Notice Plan, in form, method, and content, complies with the requirements of Rule 23 and due process, and constitutes the best notice practicable under the circumstances.

**GROGAN** V. **AARON'S INC.**

**Case No. 1:18-cv-02821 (N.D. Ga.)**

The Honorable J.P. Boulee (May 1, 2020): The Court finds that the Notice Plan as set forth in the Settlement Agreement meets the requirements of Fed. R. Civ. P. 23 and constitutes the best notice practicable under the circumstances, including direct individual notice by mail and email to Settlement Class Members where feasible and a nationwide publication website-based notice program, as well as establishing a Settlement Website at the web address of www.AaronsTCPASettlement.com, and satisfies fully the requirements the Federal Rules of Civil Procedure, the U.S. Constitution, and any other applicable law, such that the Settlement Agreement and Final Order and Judgment will be binding on all Settlement Class Members.

**CUMMINGS** V. **BOARD OF REGENTS OF THE UNIVERSITY OF NEW MEXICO** ET AL.

**Case No. D-202-CV-2001-00579 (N.M. Jud. Dist.)**

The Honorable Carl Butkus (March 30, 2020): The Court has reviewed the Class Notice, the Plan of Allocation and Distribution and Claim Form, each of which it approves in form and substance. The Court finds that the form and methods of notice set forth in the Agreement: (i) are reasonable and the best practicable notice under the circumstances; (ii) are reasonably calculated to apprise Settlement Class Members of the pendency of the Lawsuit, of their rights to object to or opt-out of the Settlement, and of the Final Approval Hearing; (iii) constitute due, adequate, and sufficient notice to all persons entitled to receive notice; and (iv) meet the requirements of the New Mexico Rules of Civil Procedure, the requirements of due process under the New Mexico and United States Constitutions, and the requirements of any other applicable rules or laws.

**SCHNEIDER** ET AL. V. **CHIPOTLE MEXICAN GRILL, INC.**

**Case No. 4:16-cv-02200 (N.D. Cal.)**

The Honorable Haywood S. Gilliam, Jr. (January 31, 2020): Given that direct notice appears to be infeasible, the third-party settlement administrator will implement a digital media campaign and provide for publication notice in People magazine, a nationwide publication, and the East Bay Times. SA § IV.A, C; Dkt. No. 205-12 at ¶¶ 13–23. The publication notices will run for four consecutive weeks. Dkt. No. 205 at ¶ 23. The digital media campaign includes an internet banner notice implemented using a 60-day desktop and mobile campaign. Dkt. No. 205-12 at ¶ 18. It will rely on "Programmatic Display Advertising" to reach the "Target Audience," Dkt. No. 216-1 at ¶ 6, which is estimated to include 30,100,000 people and identified using the target definition of "Fast Food & Drive-In Restaurants Total Restaurants Last 6 Months [Chipotle Mexican Grill]," Dkt. No. 205-12 at ¶ 13. Programmatic display advertising utilizes "search targeting," "category contextual targeting," "keyword contextual targeting," and "site targeting," to place ads. Dkt. No. 216-1 at ¶¶ 9–12. And

through "learning" technology, it continues placing ads on websites where the ad is performing well. Id. ¶ 7. Put simply, prospective Class Members will see a banner ad notifying them of the settlement when they search for terms or websites that are similar to or related to Chipotle, when they browse websites that are categorically relevant to Chipotle (for example, a website related to fast casual dining or Mexican food), and when they browse websites that include a relevant keyword (for example, a fitness website with ads comparing fast casual choices). Id. ¶¶ 9–12. By using this technology, the banner notice is "designed to result in serving approximately 59,598,000 impressions." Dkt. No. 205-12 at ¶ 18.

The Court finds that the proposed notice process is "'reasonably calculated, under all the circumstances,' to apprise all class members of the proposed settlement." Roes, 944 F.3d at 1045 (citation omitted).

## HANLEY v. TAMPA BAY SPORTS AND ENTERTAINMENT LLC
### Case No. 8:19-cv-00550 (M.D. Fla.)

The Honorable Charlene Edwards Honeywell (January 7, 2020): The Court approves the form and content of the Class notices and claim forms substantially in the forms attached as Exhibits A-D to the Settlement. The Court further finds that the Class Notice program described in the Settlement is the best practicable under the circumstances. The Class Notice program is reasonably calculated under the circumstances to inform the Settlement Class of the pendency of the Action, certification of a Settlement Class, the terms of the Settlement, Class Counsel's attorney's fees application and the request for a service award for Plaintiff, and their rights to opt-out of the Settlement Class or object to the Settlement. The Class notices and Class Notice program constitute sufficient notice to all persons entitled to notice. The Class notices and Class Notice program satisfy all applicable requirements of law, including, but not limited to, Federal Rule of Civil Procedure 23 and the Constitutional requirement of Due Process.

## CORCORAN et al. v. CVS HEALTH et al.
### Case No. 4:15-cv-03504 (N.D. Cal.)

The Honorable Yvonne Gonzalez Rogers (November 22, 2019): Having reviewed the parties' briefings, plaintiffs' declarations regarding the selection process for a notice provider in this matter and regarding Angeion Group LLC's experience and qualifications, and in light of defendants' non-opposition, the Court APPROVES Angeion Group LLC as the notice provider. Thus, the Court GRANTS the motion for approval of class notice provider and class notice program on this basis.

Having considered the parties' revised proposed notice program, the Court agrees that the parties' proposed notice program is the "best notice that is practicable under the circumstances." The Court is satisfied with the representations made regarding Angeion Group LLC's methods for ascertaining email addresses from existing information in the possession of defendants. Rule 23 further contemplates and permits electronic notice to class members in certain situations. See Fed. R. Civ. P. 23(c)(2)(B). The Court finds, in light of the representations made by the parties, that this is a situation that permits electronic notification via email, in addition to notice via United States Postal Service. Thus, the Court APPROVES the parties' revised proposed class notice program, and GRANTS the motion for approval of class notice provider and class notice program as to notification via email and United States Postal Service mail.

## PATORA v. TARTE, INC.

**Case No. 7:18-cv-11760 (S.D.N.Y.)**

The Honorable Kenneth M. Karas (October 2, 2019): The Court finds that the form, content, and method of giving notice to the Class as described in Paragraph 9 of this Order: (a) will constitute the best practicable notice; (b) are reasonably calculated, under the circumstances, to apprise the Settlement Class Members of the pendency of the Action, the terms of the Proposed Settlement, and their rights under the Proposed Settlement, including but not limited to their rights to object to or exclude themselves from the Proposed Settlement and other rights under the terms of the Settlement Agreement; (c) are reasonable and constitute due, adequate, and sufficient notice to all Settlement Class Members and other persons entitled to receive notice; and (d) meet all applicable requirements of law, including but not limited to 28 U.S.C. § 1715, Rule 23(c) and (e), and the Due Process Clauses of the United States Constitution. The Court further finds that all of the notices are written in simple terminology, are readily understandable by Settlement Class Members, and are materially consistent with the Federal Judicial Center's illustrative class action notices.

## CARTER et al. v. GENERAL NUTRITION CENTERS, INC., and GNC HOLDINGS, INC.

**Case No. 2:16-cv-00633 (W.D. Pa.)**

The Honorable Mark R. Hornak (September 9, 2019): The Court finds that the Class Notice and the manner of its dissemination described in Paragraph 7 above and Section VII of the Agreement constitutes the best practicable notice under the circumstances and is reasonably calculated, under all the circumstances, to apprise proposed Settlement Class Members of the pendency of this action, the terms of the Agreement, and their right to object to or exclude themselves from the proposed Settlement Class. The Court finds that the notice is reasonable, that it constitutes due, adequate and sufficient notice to all persons entitled to receive notice, and that it meets the requirements of due process, Rule 23 of the Federal Rules of Ci vii Procedure, and any other applicable laws.

## CORZINE v. MAYTAG CORPORATION et al.

**Case No. 5:15-cv-05764 (N.D. Cal.)**

The Honorable Beth L. Freeman (August 21, 2019): The Court, having reviewed the proposed Summary Notice, the proposed FAQ, the proposed Publication Notice, the proposed Claim Form, and the proposed plan for distributing and disseminating each of them, finds and concludes that the proposed plan will provide the best notice practicable under the circumstances and satisfies all requirements of federal and state laws and due process.

## MEDNICK v. PRECOR, INC.

**Case No. 1:14-cv-03624 (N.D. Ill.)**

The Honorable Harry D. Leinenweber (June 12, 2019): Notice provided to Class Members pursuant to the Preliminary Class Settlement Approval Order constitutes the best notice practicable under the circumstances, including individual email and mail notice to all Class Members who could be identified through reasonable effort, including information provided by authorized third-party retailers of Precor. Said notice provided full and adequate notice of these proceedings and of the matter set forth therein, including the proposed Settlement set forth in the Agreement, to all persons entitled to such notice, and said notice fully satisfied the requirements of F.R.C.P. Rule 23 (e) and (h) and the requirements of due process under the United States and California Constitutions.

## GONZALEZ v. TCR SPORTS BROADCASTING HOLDING LLP ET AL.
### Case No. 1:18-cv-20048 (S.D. Fla.)

The Honorable Darrin P. Gayles (May 24, 2019): The Court finds that notice to the class was reasonable and the best notice practicable under the circumstances, consistent with Rule 23(e)(1) and Rule 23(c)(2)(B).

## ANDREWS ET AL. V. THE GAP, INC. ET AL.
### Case No. CGC-18-567237 (Cal. Super. Ct.)

The Honorable Richard B. Ulmer Jr. (May 10, 2019): The Court finds that (a) the Full Notice, Email Notice, and Publication constitute the best notice practicable under the circumstances, (b) they constitute valid, due, and sufficient notice to all members of the Class, and (c) they comply fully with the requirements of California Code of Civil Procedure section 382, California Rules of Court 3.766 and 3.769, the California and United States Constitutions, and other applicable law.

## COLE ET AL. V. NIBCO, INC.
### Case No. 3:13-cv-07871 (D.N.J.)

The Honorable Freda L. Wolfson (April 11, 2019): The record shows, and the Court finds, that the Notice Plan has been implemented in the manner approved by the Court in its Preliminary Approval Order. The Court finds that the Notice Plan constitutes: (i) the best notice practicable to the Settlement Class under the circumstances; (ii) was reasonably calculated, under the circumstances, to apprise the Settlement Class of the pendency of this…, (iii) due, adequate, and sufficient notice to all Persons entitled to receive notice; and (iv) notice that fully satisfies the requirements of the United States Constitution (including the Due Process Clause), Fed. R. Civ. P. 23, and any other applicable law.

## DIFRANCESCO ET AL. V. UTZ QUALITY FOODS, INC.
### Case No. 1:14-cv-14744 (D. Mass.)

The Honorable Douglas P. Woodlock (March 15, 2019): The Court finds that the Notice plan and all forms of Notice to the Class as set forth in the Settlement Agreement and Exhibits 2 and 6 thereto, as amended (the "Notice Program"), is reasonably calculated to, under all circumstances, apprise the members of the Settlement Class of the pendency of this action, the certification of the Settlement Class, the terms of the Settlement Agreement, and the right of members to object to the settlement or to exclude themselves from the Class. The Notice Program is consistent with the requirements of Rule 23 and due process, and constitutes the best notice practicable under the circumstances.

## IN RE: CHRYSLER-DODGE-JEEP ECODIESEL MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION
### Case No. 3:17-md-02777 (N.D. Cal.)

The Honorable Edward M. Chen (February 11, 2019): Also, the parties went through a sufficiently rigorous selection process to select a settlement administrator. See Proc. Guidance for Class Action Sett. ¶ 2; see also Cabraser Decl. ¶¶ 9-10. While the settlement administration costs are significant – an estimated $1.5 million – they are adequately justified given the size of the class and the relief being provided.

In addition, the Court finds that the language of the class notices (short and long-form) is appropriate and that the means of notice – which includes mail notice, electronic notice, publication notice, and social media "marketing" – is the "best notice...practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B); see also Proc. Guidance for Class Action Sett. ¶¶ 3-5, 9 (addressing class notice, opt-outs, and objections). The Court notes that the means of notice has changed somewhat, as explained in the Supplemental Weisbrot Declaration filed on February 8, 2019, so that notice will be more targeted and effective. See generally Docket No. 525 (Supp. Weisbrot Decl.) (addressing, inter alia, press release to be distributed via national newswire service, digital and social media marketing designed to enhance notice, and "reminder" first-class mail notice when AEM becomes available).

Finally, the parties have noted that the proposed settlement bears similarity to the settlement in the Volkswagen MDL. See Proc. Guidance for Class Action Sett. ¶ 11.

## RYSEWYK ET AL. V. SEARS HOLDINGS CORPORATION ET AL.

### Case No. 1:15-cv-04519 (N.D. Ill.)

The Honorable Manish S. Shah (January 29, 2019): The Court holds that the Notice and notice plan as carried out satisfy the requirements of Rule 23(e) and due process. This Court has previously held the Notice and notice plan to be reasonable and the best practicable under the circumstances in its Preliminary Approval Order dated August 6, 2018. (Dkt. 191) Based on the declaration of Steven Weisbrot, Esq. of Angeion Group (Dkt. No. 209-2), which sets forth compliance with the Notice Plan and related matters, the Court finds that the multi-pronged notice strategy as implemented has successfully reached the putative Settlement Class, thus constituting the best practicable notice and satisfying due process.

## MAYHEW ET AL. V. KAS DIRECT, LLC, AND S.C. JOHNSON & SON, INC.

### Case No. 7:16-cv-06981 (S.D.N.Y.)

The Honorable Vincent J. Briccetti (June 26, 2018): In connection with their motion, plaintiffs provide the declaration of Steven Weisbrot, Esq., a principal at the firm Angeion Group, LLC, which will serve as the notice and settlement administrator in this case. (Doc. #101, Ex. F: Weisbrot Decl.) According to Mr. Weisbrot, he has been responsible for the design and implementation of hundreds of class action administration plans, has taught courses on class action claims administration, and has given testimony to the Judicial Conference Committee on Rules of Practice and Procedure on the role of direct mail, email, and digital media in due process notice. Mr. Weisbrot states that the internet banner advertisement campaign will be responsive to search terms relevant to "baby wipes, baby products, baby care products, detergents, sanitizers, baby lotion, [and] diapers," and will target users who are currently browsing or recently browsed categories "such as parenting, toddlers, baby care, [and] organic products." (Weisbrot Decl. ¶ 18). According to Mr. Weisbrot, the internet banner advertising campaign will reach seventy percent of the proposed class members at least three times each. (Id. ¶ 9). Accordingly, the Court approves of the manner of notice proposed by the parties as it is reasonable and the best practicable option for confirming the class members receive notice.

## IN RE: OUTER BANKS POWER OUTAGE LITIGATION

**Case No. 4:17-cv-00141 (E.D.N.C.)**

The Honorable James C. Dever III (May 2, 2018):  The court has reviewed the proposed notice plan and finds that the notice plan provides the best practicable notice under the circumstances and, when completed, shall constitute fair, reasonable, and adequate notice of the settlement to all persons and entities affected by or entitled to participate in the settlement, in full compliance with the notice requirements of Fed. R. Civ. P. 23(c)(2)(B) and due process. Thus, the court approves the proposed notice plan.

## GOLDEMBERG ET AL. V. JOHNSON & JOHNSON CONSUMER COMPANIES, INC.

**Case No. 7:13-cv-03073 (S.D.N.Y.)**

The Honorable Nelson S. Roman (November 1, 2017): Notice of the pendency of the Action as a class action and of the proposed Settlement, as set forth in the Settlement Notices, was given to all Class Members who could be identified with reasonable effort, consistent with the terms of the Preliminary Approval Order. The form and method of notifying the Class of the pendency of the Action as a class action and of the terms and conditions of the proposed Settlement met the requirements of Rule 23 of the Federal Rules of Civil Procedure, due process, and any other applicable law in the United States. Such notice constituted the best notice practicable under the circumstances, and constituted due and sufficient notice to all persons and entities entitled thereto.

## HALVORSON V. TALENTBIN, INC.

**Case No. 3:15-cv-05166 (N.D. Cal.)**

The Honorable Joseph C. Spero (July 25, 2017): The Court finds that the Notice provided for in the Order of Preliminary Approval of Settlement has been provided to the Settlement Class, and the Notice provided to the Settlement Class constituted the best notice practicable under the circumstances, and was in full compliance with the notice requirements of Rule 23 of the Federal Rules of Civil Procedure, due process, the United States Constitution, and any other applicable law. The Notice apprised the members of the Settlement Class of the pendency of the litigation; of all material elements of the proposed settlement, including but not limited to the relief afforded the Settlement Class under the Settlement Agreement; of the res judicata effect on members of the Settlement Class and of their opportunity to object to, comment on, or opt-out of, the Settlement; of the identity of Settlement Class Counsel and of information necessary to contact Settlement Class Counsel; and of the right to appear at the Fairness Hearing. Full opportunity has been afforded to members of the Settlement Class to participate in the Fairness Hearing. Accordingly, the Court determines that all Final Settlement Class Members are bound by this Final Judgment in accordance with the terms provided herein.

## IN RE: ASHLEY MADISON CUSTOMER DATA SECURITY BREACH LITIGATION

**MDL No. 2669/Case No. 4:15-md-02669 (E.D. Mo.)**

The Honorable John A. Ross (July 21, 2017): The Court further finds that the method of disseminating Notice, as set forth in the Motion, the Declaration of Steven Weisbrot, Esq. on Adequacy of Notice Program, dated July 13, 2017, and the Parties' Stipulation—including an extensive and targeted publication campaign composed of both consumer magazine publications in People and Sports Illustrated, as well as serving 11,484,000 highly targeted digital banner ads to reach the prospective class members that will deliver approximately 75.3% reach with an average frequency of 3.04 —is

ANGEION GROUP
Writing the Rules

the best method of notice practicable under the circumstances and satisfies all requirements provided in Rule 23(c)(2)(B) and all Constitutional requirements including those of due process.

The Court further finds that the Notice fully satisfies Rule 23 of the Federal Rules of Civil Procedure and the requirements of due process; provided, that the Parties, by agreement, may revise the Notice, the Claim Form, and other exhibits to the Stipulation, in ways that are not material or ways that are appropriate to update those documents for purposes of accuracy.

## TRAXLER ET AL. V. PPG INDUSTRIES INC. ET AL.

### Case No. 1:15-cv-00912 (N.D. Ohio)

The Honorable Dan Aaron Polster (April 27, 2017): The Court hereby approves the form and procedure for disseminating notice of the proposed settlement to the Settlement Class as set forth in the Agreement. The Court finds that the proposed Notice Plan contemplated constitutes the best notice practicable under the circumstances and is reasonably calculated, under the circumstances, to apprise Settlement Class Members of the pendency of the Action and their right to object to the proposed settlement or opt out of the Settlement Class in full compliance with the requirements of applicable law, including the Due Process Clause of the United States Constitution and Rules 23(c) and (e). In addition, Class Notice clearly and concisely states in plain, easily understood language: (i) the nature of the action; (ii) the definition of the certified Settlement Class; (iii) the claims and issues of the Settlement Class; (iv) that a Settlement Class Member may enter an appearance through an attorney if the member so desires; (v) that the Court will exclude from the Settlement Class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

## IN RE: THE HOME DEPOT, INC., CUSTOMER DATA SECURITY BREACH LITIGATION

### Case No. 1:14-md-02583 (N.D. Ga.)

The Honorable Thomas W. Thrash Jr. (March 10, 2017): The Court finds that the form, content, and method of giving notice to the settlement class as described in the settlement agreement and exhibits: (a) constitute the best practicable notice to the settlement class; (b) are reasonably calculated, under the circumstances, to apprise settlement class members of the pendency of the action, the terms of the proposed settlement, and their rights under the proposed settlement; (c) are reasonable and constitute due, adequate, and sufficient notice to those persons entitled to receive notice; and (d) satisfy the requirements of Federal Rule of Civil Procedure 23, the constitutional requirement of due process, and any other legal requirements. The Court further finds that the notice is written in plain language, uses simple terminology, and is designed to be readily understandable by settlement class members.

## ROY V. TITEFLEX CORPORATION T/A GASTITE AND WARD MANUFACTURING, LLC

### Case No. 384003V (Md. Cir. Ct.)

The Honorable Ronald B. Rubin (February 24, 2017): What is impressive to me about this settlement is in addition to all the usual recitation of road racing litanies is that there is going to be a) public notice of a real nature and b) about a matter concerning not just money but public safety and then folks will have the knowledge to decide for themselves whether to take steps to protect themselves or not. And that's probably the best thing a government can do is to arm their citizens with knowledge and then the citizens can make decision. To me that is a key piece of this deal. *I think the notice provisions are exquisite* [emphasis added].

## IN RE: LG FRONT LOADING WASHING MACHINE CLASS ACTION LITIGATION

**Case No. 2:08-cv-00051 (D.N.J.)**

The Honorable Madeline Cox Arleo (June 17, 2016): This Court further approves the proposed methods for giving notice of the Settlement to the Members of the Settlement Class, as reflected in the Settlement Agreement and the joint motion for preliminary approval. The Court has reviewed the notices attached as exhibits to the Settlement, the plan for distributing the Summary Notices to the Settlement Class, and the plan for the Publication Notice's publication in print periodicals and on the internet, and finds that the Members of the Settlement Class will receive the best notice practicable under the circumstances. The Court specifically approves the Parties' proposal to use reasonable diligence to identify potential class members and an associated mailing and/or email address in the Company's records, and their proposal to direct the ICA to use this information to send absent class members notice both via first class mail and email. The Court further approves the plan for the Publication Notice's publication in two national print magazines and on the internet. The Court also approves payment of notice costs as provided in the Settlement. The Court finds that these procedures, carried out with reasonable diligence, will constitute the best notice practicable under the circumstances and will satisfy.

## FENLEY v. APPLIED CONSULTANTS, INC.

**Case No. 2:15-cv-00259 (W.D. Pa.)**

The Honorable Mark R. Hornak (June 16, 2016):  The Court would note that it approved notice provisions of the settlement agreement in the proceedings today. That was all handled by the settlement and administrator Angeion. The notices were sent. The class list utilized the Postal Service's national change of address database along with using certain proprietary and other public resources to verify addresses. the requirements of Fed.R.Civ.P. 23(c)(2), Fed.R.Civ.P. 23(e) (l), and Due Process....

The Court finds and concludes that the mechanisms and methods of notice to the class as identified were reasonably calculated to provide all notice required by the due process clause, the applicable rules and statutory provisions, and that the results of ***the efforts of Angeion were highly successful and fulfilled all of those requirements*** [emphasis added].

## FUENTES ET AL. V. UNIRUSH, LLC D/B/A UNIRUSH FINANCIAL SERVICES ET AL.

**Case No. 1:15-cv-08372 (S.D.N.Y.)**

The Honorable J. Paul Oetken (May 16, 2016): The Court approves, as to form, content, and distribution, the Claim Form attached to the Settlement Agreement as Exhibit A, the Notice Plan, and all forms of Notice to the Settlement Class as set forth in the Settlement Agreement and Exhibits B-D, thereto, and finds that such Notice is the best notice practicable under the circumstances, and that the Notice complies fully with the requirements of the Federal Rules of Civil Procedure. The Court also finds that the Notice constitutes valid, due and sufficient notice to all persons entitled thereto, and meets the requirements of Due Process. The Court further finds that the Notice is reasonably calculated to, under all circumstances, reasonably apprise members of the Settlement Class of the pendency of the Actions, the terms of the Settlement Agreement, and the right to object to the settlement and to exclude themselves from the Settlement Class. The Parties, by agreement, may revise the Notices and Claim Form in ways that are not material, or in ways that are appropriate to update those documents for purposes of accuracy or formatting for publication.

**ANGEION GROUP**
Writing the Rules

## IN RE: WHIRLPOOL CORP. FRONTLOADING WASHER PRODUCTS LIABILITY LITIGATION

**MDL No. 2001/Case No. 1:08-wp-65000 (N.D. Ohio)**

The Honorable Christopher A. Boyko (May 12, 2016): The Court, having reviewed the proposed Summary Notices, the proposed FAQ, the proposed Publication Notice, the proposed Claim Form, and the proposed plan for distributing and disseminating each of them, finds and concludes that the proposed plan for distributing and disseminating each of them will provide the best notice practicable under the circumstances and satisfies all requirements of federal and state laws and due process.

## SATERIALE ET AL. V. R.J. REYNOLDS TOBACCO CO.

**Case No. 2:09-cv-08394 (C.D. Cal.)**

The Honorable Christina A. Snyder (May 3, 2016): The Court finds that the Notice provided to the Settlement Class pursuant to the Settlement Agreement and the Preliminary Approval Order has been successful, was the best notice practicable under the circumstances and (1) constituted notice that was reasonably calculated, under the circumstances, to apprise members of the Settlement Class of the pendency of the Action, their right to object to the Settlement, and their right to appear at the Final Approval Hearing; (2) was reasonable and constituted due, adequate, and sufficient notice to all persons entitled to receive notice; and (3) met all applicable requirements of the Federal Rules of Civil Procedure, Due Process, and the rules of the Court.

## FERRERA ET AL. V. SNYDER'S-LANCE, INC.

**Case No. 0:13-cv-62496 (S.D. Fla.)**

The Honorable Joan A. Lenard (February 12, 2016): The Court approves, as to form and content, the Long-Form Notice and Short- Form Publication Notice attached to the Memorandum in Support of Motion for Preliminary Approval of Class Action Settlement as Exhibits 1 and 2 to the Stipulation of Settlement. The Court also approves the procedure for disseminating notice of the proposed settlement to the Settlement Class and the Claim Form, as set forth in the Notice and Media Plan attached to the Memorandum in Support of Motion for Preliminary Approval of Class Action Settlement as Exhibits G. The Court finds that the notice to be given constitutes the best notice practicable under the circumstances, and constitutes valid, due, and sufficient notice to the Settlement Class in full compliance with the requirements of applicable law, including the Due Process Clause of the United States Constitution.

## IN RE: POOL PRODUCTS DISTRIBUTION MARKET ANTITRUST LITIGATION

**MDL No. 2328/Case No. 2:12-md-02328 (E.D. La.)**

The Honorable Sarah S. Vance (December 31, 2014): To make up for the lack of individual notice to the remainder of the class, the parties propose a print and web-based plan for publicizing notice. The Court welcomes the inclusion of web- based forms of communication in the plan. The Court finds that the proposed method of notice satisfies the requirements of Rule 23(c)(2)(B) and due process. The direct emailing of notice to those potential class members for whom Hayward and Zodiac have a valid email address, along with publication of notice in print and on the web, is reasonably calculated to apprise class members of the settlement. Moreover, the plan to combine notice for the Zodiac and Hayward settlements should streamline the process and avoid confusion

that might otherwise be caused by a proliferation of notices for different settlements. Therefore, the Court approves the proposed notice forms and the plan of notice.

### SOTO ET AL. V. THE GALLUP ORGANIZATION, INC.
**Case No. 0:13-cv-61747 (S.D. Fla.)**

The Honorable Marcia G. Cooke (June 16, 2015): The Court approves the form and substance of the notice of class action settlement described in ¶ 8 of the Agreement and attached to the Agreement as Exhibits A, C and D. The proposed form and method for notifying the Settlement Class Members of the settlement and its terms and conditions meet the requirements of Fed. R. Civ. P. 23(c)(2)(B) and due process, constitute the best notice practicable under the circumstances, and shall constitute due and sufficient notice to all persons and entities entitled to the notice. The Court finds that the proposed notice is clearly designed to advise the Settlement Class Members of their rights.

### OTT V. MORTGAGE INVESTORS CORPORATION OF OHIO, INC.
**Case No. 3:14-cv-00645 (D. Or.)**

The Honorable Janice M. Stewart (July 20, 2015): The Notice Plan, in form, method, and content, fully complies with the requirements of Rule 23 and due process, constitutes the best notice practicable under the circumstances, and is due and sufficient notice to all persons entitled thereto. The Court finds that the Notice Plan is reasonably calculated to, under all circumstances, reasonably apprise the persons in the Settlement Class of the pendency of this action, the terms of the Settlement Agreement, and the right to object to the Settlement and to exclude themselves from the Settlement Class.

**EXHIBIT B1**

# NOTICE OF PROPOSED CLASS ACTION SETTLEMENT

UNITED STATES DISTRICT COURT, NORTHERN DISTRICT OF ILLINOIS

**Barnes v. Unilever United States Incorporated**
Case No. 1:21-cv-06191 (N.D. Ill.)

> If you purchased **Suave 24-Hour Protection Powder Aerosol Antiperspirant** or **Suave 24-Hour Protection Fresh Aerosol Antiperspirant** between January 1, 2018 and [preliminary approval date], you could receive a payment from a class action settlement.

*A federal court authorized this Notice. You are not being sued.*
*This is not a solicitation from a lawyer.*

- A Settlement has been reached with Unilever United States, Inc. ("Unilever" or "Defendant") in a class action lawsuit concerning **Suave 24-Hour Protection Powder Aerosol Antiperspirant** and **Suave 24-Hour Protection Fresh Aerosol Antiperspirant** (the "Covered Products"), which were subjected to a nationwide recall by the Defendant after an internal review showed slightly elevated levels of benzene in some product samples.

- You are included in this Settlement as a Settlement Class Member if you are a natural person who, between January 1, 2018, and date of preliminary approval, purchased in the United States any Covered Product for personal, family or household use, and not resale.

- The lawsuit is captioned *Barnes v. Unilever United States Incorporated,* Case No. 1:21-cv-06191, pending in the United States District Court for the Northern District of Illinois. The Defendant denies the Plaintiffs' allegations and all charges of wrongdoing or liability but has agreed to the Settlement to avoid the costs and risks associated with continued litigation.

- Your rights are affected whether you act or do not act. Please read this Notice carefully.

| SUMMARY OF YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | | DEADLINE |
|---|---|---|
| **SUBMIT A CLAIM** | The only way to receive a cash payment from this Settlement is by submitting a valid and timely Claim Form.<br><br>You can submit your Claim Form online at _____ or download the Claim Form from the Settlement Website and mail it to the Claims Administrator. You may also call or email the Claims Administrator to receive a paper copy of the Claim Form. | **_____, 2024** |
| **OPT OUT OF THE SETTLEMENT** | You can choose to opt out of the Settlement and receive no payment. This option allows you to sue, continue to sue, or be part of another lawsuit against the Defendant related to the legal claims resolved by this Settlement. You can elect your own legal counsel at your own expense. | **_____, 2024** |
| **OBJECT TO THE SETTLEMENT AND/OR ATTEND A HEARING** | If you do not opt out of the Settlement, you may object to it by writing to the Court about why you do not like the Settlement. You may also ask the Court for permission to speak about your objection at the Final Approval Hearing. If you object, you may also submit a claim form. | **_____, 2024** |
| **DO NOTHING** | Unless you opt out of the settlement, you are automatically part of the Settlement. If you do nothing, you will not get a payment from this Settlement and you will give up the right to sue, continue to sue, or be part of another lawsuit against the Defendant related to the legal claims resolved by this Settlement. | No Deadline |

- These rights and options—**and the deadlines to exercise them**—are explained in this Notice.

- The Court in charge of this case still has to decide whether to approve the Settlement.

### WHAT THIS NOTICE CONTAINS

NOTICE OF PROPOSED CLASS ACTION SETTLEMENT ................................................................... 1

BASIC INFORMATION ................................................................................................................ 3

WHO IS IN THE SETTLEMENT? ................................................................................................... 4

THE SETTLEMENT BENEFITS ...................................................................................................... 4

HOW TO GET A PAYMENT - MAKING A CLAIM ........................................................................... 5

THE LAWYERS REPRESENTING YOU ........................................................................................... 6

EXCLUDING YOURSELF FROM THE SETTLEMENT ........................................................................ 7

COMMENTING ON OR OBJECTING TO THE SETTLEMENT............................................................ 8

THE FINAL APPROVAL HEARING .............................................................................................. 9

IF I DO NOTHING ..................................................................................................................... 9

GETTING MORE INFORMATION ................................................................................................ 10

**Questions? Visit _____ or call toll-free 1-XXX-XXX-XXXX**

2

# BASIC INFORMATION

## 1. Why was this Notice issued?

A federal court authorized this Notice because you have a right to know about the proposed Settlement of this class action lawsuit and about all your options before the Court decides whether to grant final approval of the Settlement. This Notice explains the lawsuit, your legal rights, what benefits are available, and who can receive them.

The Honorable Matthew F. Kennelly of the United States District Court for the Northern District of Illinois is overseeing this class action. The lawsuit is called *Barnes v. Unilever United States Incorporated,* Case No. 1:21-cv-06191 (N.D. Ill.). The people that filed this lawsuit are called the "Plaintiffs" and the companies they sued, Unilever United States, Inc. ("Unilever") is called the "Defendant."

## 2. What is this lawsuit about?

This lawsuit claims that certain lots of the Covered Products may contain elevated levels of the chemical benzene and that Defendant engaged in unfair business practices by selling potentially adulterated products. The Covered Products were recalled nationwide on March 30, 2022, after Defendant's internal review showed slightly elevated levels of benzene in some product samples.

Defendant denies all of Plaintiffs' allegations and all charges of wrongdoing or liability against it arising out of any of the conduct, statements, acts, or omissions alleged, or that could have been alleged against it in the litigation.

## 3. What is a class action?

In a class action, one or more individuals sue on behalf of other people with similar claims. These individuals are known as the "Plaintiffs" or "Class Representatives." Together, the people included in the class action are called a "class" or "class members." One court resolves the lawsuit for all class members, except for those who opt out from the settlement. In this Settlement, the Class Representatives are Yvonne Barnes, Patricia Dean, Antonio Morris, and Bernadette Bogdanovs.

## 4. Why is there a Settlement?

The Court did not decide in favor of the Plaintiffs or the Defendant. The Defendant denies all claims and that they violated any law. Plaintiffs and the Defendant have agreed to a Settlement to avoid the costs and risks of a trial, and to allow the Settlement Class Members to receive payments from the Settlement. The Class Representatives and their attorneys think the Settlement is best for all Settlement Class Members.

## WHO IS IN THE SETTLEMENT?

### 5. Who is in the Settlement?

The Settlement Class includes all natural persons who, between January 1, 2018, and the date of Preliminary Approval, purchased in the United States any Covered Product for personal, family or household use, and not resale.

Covered Products means Suave 24-Hour Protection Powder Aerosol Antiperspirant and Suave 24-Hour Protection Fresh Aerosol Antiperspirant.

### 6. Are there exceptions to being included?

Yes. The Settlement Class does not include: (1) the judge presiding over this matter and members of his or her immediate family; (2) Unilever; (3) any entity in which Unilever has a controlling interest; (4) any of Unilever's subsidiaries, parents, affiliates, and officers, directors, employees, legal representatives, heirs, successors, or assigns; and (5) any persons who timely exclude themselves from the Settlement Class.

If you are not sure whether you are included in the Settlement Class, you can ask for free help by emailing or writing to Claims Administrator at:

Suave Antiperspirant Settlement
c/o Claims Administrator
1650 Arch Street, Suite 2210
Philadelphia, PA 19103
Email Address

You may also view the Settlement Agreement and Release ("Settlement Agreement") at [Website URL].

## THE SETTLEMENT BENEFITS

### 7. What does the Settlement provide?

The Defendant has agreed to pay two million dollars ($2,000,000) into a Settlement Fund for payment of: (i) Valid Claim Forms for cash benefits submitted by Settlement Class Members; (ii) the notice and other administrative costs incurred by the Claims Administrator; (iii) Attorneys' Fees and Costs, as may be ordered by the Court, and (iv) any Service Award to the Class Representatives, not to exceed $1,500 per Class Representative, as may be ordered by the Court.

## 8. How much will my payment be?

All members of the Settlement Class who submit a Valid Claim are eligible to receive monetary relief as set forth below. No payments will be made to any members of the Settlement Class who do not submit a Valid Claim.

> ➢ Settlement Class Members who timely submit a Valid Claim with Proof of Purchase shall receive the purchase price for each Covered Product listed on the Proof of Purchase, inclusive of all taxes.

> ➢ Settlement Class Members who submit a Valid Claim <u>without</u> Proof of Purchase shall receive the average retail price—$3.29—for up to three (3) Covered Products claimed per household.

> ➢ Each Settlement Class Member's payment shall be decreased by the amount of cash or voucher payments that Settlement Class Member has received or will receive for claims made in the Recall Reimbursement Program (provided that the payment shall not be reduced below $0.00).

> ➢ Settlement Class Member payments may be increased or decreased on a pro rata basis, as necessary, such that the total amount paid to all Settlement Class Members equals the Available Settlement Funds.

## 9. What claims am I releasing if I stay in the Settlement Class?

Unless you opt out of the Settlement, you cannot sue, continue to sue, or be part of any other lawsuit against the Defendant about any of the legal claims this Settlement resolves. The "Release" section in the Settlement Agreement describes the legal claims that you give up ("Released Claims") if you remain in the Settlement Class. The Settlement Agreement can be found at [Website URL].

### HOW TO GET A PAYMENT – MAKING A CLAIM

## 10. How do I submit a claim and get a cash payment?

To qualify for a settlement payment, you must complete and submit a Claim Form by DEADLINE DATE. You may complete and submit a Claim Form online at [Website URL] or mail a completed Claim Form to Suave Antiperspirant Settlement, c/o Claims Administrator, 1650 Arch Street, Suite 2210, Philadelphia, PA 19103. Claim Forms are also available by calling 1-XXX-XXX-XXXX, or by emailing [Email Address].

Settlement Class Members will have the option to receive their payment by electronic deposit (through Venmo or Zelle), or pre-paid MasterCard, at the Settlement Class Member's option—with paper checks available upon request.

If there are any funds remaining from unclaimed payments or payments that could not be issued, the Parties shall request the Court approve awarding those remaining funds *cy pres* to a 501(c)(3) not-for-profit entity mutually agreeable to the Parties.

**Questions? Visit _____ or call toll-free 1-XXX-XXX-XXXX**

## 11. What is the deadline for submitting a claim?

If you submit a claim by U.S. mail, the completed and signed Claim Form must be postmarked by **[Deadline Date]**. If submitting a Claim Form online, you must do so by **[Deadline Date]**.

## 12. When will I get my payment?

The Court will hold a Final Approval Hearing at **XX:XX a.m./p.m. (CT) on DATE,** in Courtroom 2103, located at the Everett McKinley Dirksen United States Courthouse, 219 South Dearborn Street, Chicago, IL 60604. At this hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate. After the hearing, the Court will decide whether to approve the Settlement.

If the Court approves the Settlement, there may be appeals. It is always uncertain whether appeals will be filed and, if so, how long it will take to resolve them. Settlement payments will not be distributed until the Court grants Final Approval of the Settlement and after any appeals are resolved.

The briefs and declarations in support of the Final Approval of the Settlement and the requests described above will be posted on the Settlement Website, [Website URL], after they are filed. You may ask to appear at the hearing, but you do not have to appear. The date and time of the Final Approval Hearing is also subject to modification by the Court. Please review the Settlement Website for any updated information regarding the final hearing.

### THE LAWYERS REPRESENTING YOU

## 13. Do I have a lawyer in the case?

Yes. The Court has appointed the following law firms to represent the Settlement Class as Plaintiffs' Counsel:

**LEVIN SEDRAN & BERMAN**
Charles E. Schaffer, Esq.
510 Walnut Street, Suite 500
Philadelphia, PA 19106

**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN PLLC**
Nick Suciu, III
6905 Telegraph Rd., Suite 115
Bloomfield Hills, MI 48301

**SHUB & JOHNS LLC**
Jonathan Shub
Four Tower Bridge
200 Barr Harbor Dr. Ste. 400
West Conshohocken, PA 19428

**Questions? Visit _____ or call toll-free 1-XXX-XXX-XXXX**

**BURSOR & FISHER, P.A.**
Max S. Roberts
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019

**THE SULTZER LAW GROUP, P.C.**
Jason P. Sultzer
85 Civic Center Plaza, Suite 200
Poughkeepsie, NY 12601

You will not be charged for their services.

## 14. Should I get my own lawyer?

You do not need to hire your own lawyer because Plaintiffs' Counsel works for you. If you want to be represented by your own lawyer, you may hire one at your own expense.

## 15. How will the lawyers be paid?

Plaintiffs' Counsel may apply to the Court for an award of their Attorneys' Fees and Costs in a total amount not to exceed six hundred sixty thousand dollars ($660,000.00). They will also ask the Court to approve Service Awards for each of the Class Representatives not to exceed $1,500 each. The Court may award less than these amounts. If approved, these fees, costs and awards will be paid from the Settlement Fund.

## EXCLUDING YOURSELF FROM THE SETTLEMENT

## 16. How do I opt out of the Settlement?

If you do not want to receive any benefits from the Settlement, and you want to keep your right, if any, to separately sue the Defendant about the legal issues in this case, you must take steps to exclude yourself from the Settlement Class. This is called "opting out" of the Settlement Class. The deadline for requesting exclusion from the Settlement is **[Deadline Date]**.

To exclude yourself from the Settlement, you may submit your exclusion request online at [Website URL]. Alternatively, you can download, complete, and submit the Opt-Out Form available at [Website URL]. You may also submit a written request for exclusion that includes the following information: (i) the name of the litigation, *Barnes v. Unilever United States Incorporated*, Case No. 1:21-cv-06191 (N.D. Ill.); (ii) your name and current address; (iii) your personal signature; and (iv) a statement clearly indicating your intent to be excluded from the Settlement.

Your request for exclusion must be submitted online at [Website URL] or via U.S. mail at the address below:

**Questions? Visit _____ or call toll-free 1-XXX-XXX-XXXX**

Suave Antiperspirant Settlement
ATTN: Exclusion Request
PO Box 58220
Philadelphia, PA 19102

If you exclude yourself, you are stating to the Court that you do not want to be part of the Settlement. You will not be eligible to receive a payment if you exclude yourself.

Your online request for exclusion must be submitted on or before **[Deadline Date]**.

If submitted by U.S. mail, the Opt-Out Form, or any written request to opt-out must be mailed with a postmark date no later than **[Deadline Date]**.

## COMMENTING ON OR OBJECTING TO THE SETTLEMENT

### 17. How do I tell the Court if I like or do not like the Settlement?

If you are a Settlement Class Member, you can choose (but are not required) to object to the Settlement if you do not like it or a portion of it. You can give reasons why you think the Court should not approve it. The Court will consider your views.

Objections must be electronically filed via the Court's ECF system or delivered to the Clerk of the Court by mail, express mail, or personal delivery. To be timely, the objection must be received by the Clerk of the Court (not just postmarked or sent) prior to [Objection Deadline].

Each objection must include: (i) the case name *Barnes et al. v. Unilever United States, Inc*., Case No. 1:21-cv-06191; (ii) the name, address, and telephone number of the objector; (iii) the name, address, and telephone number of all counsel (if any) who represent the objector, including any former or current counsel who may be entitled to compensation for any reason if the objection is successful; (iv) documents or testimony sufficient to establish membership in the Settlement Class; (v) a detailed statement of any objection asserted, including the grounds therefor; (vi) whether the objector is, and any reasons for, requesting the opportunity to appear and be heard at the Final Approval hearing; (vii) the identity of all counsel (if any) representing the objector who will appear at the Final Approval hearing and, if applicable, a list of all persons who will be called to testify in support of the objection; (viii) copies of any papers, briefs, declarations, affidavits, or other documents upon which the objection is based; (ix) a detailed list of any other objections submitted by the Settlement Class Member, or his/her counsel, to any class actions submitted in any state or federal court in the United States in the previous five years (or affirmatively stating that no such prior objection has been made); and (x) the objector's signature, in addition to the signature of the objector's attorney (if any) —an attorney's signature alone shall not be deemed sufficient to satisfy this requirement.

Failure to include documents or testimony sufficient to establish membership in the Settlement Class shall be grounds for overruling and/or striking the objection on grounds that the objector lacks standing to make the objection. Failure to include any of the information or documentation set forth in this paragraph also shall be grounds for overruling an objection.

**[Insert Address for Objections]**

**Questions? Visit _____ or call toll-free 1-XXX-XXX-XXXX**
8

## 18. What is the difference between objecting and excluding?

Objecting is telling the Court that you do not like something about the Settlement. You can object to the Settlement only if you do not exclude yourself from the Settlement. Excluding yourself from the Settlement is opting out and stating to the Court that you do not want to be part of the Settlement. If you opt out of the Settlement, you cannot object to it because the Settlement no longer affects you.

## THE FINAL APPROVAL HEARING

## 19. When is the Court's Final Approval Hearing?

The Court will hold a Final Approval Hearing at **XX:XX a.m./p.m. (CT) on DATE,** in Courtroom 2103, located at the Everett McKinley Dirksen United States Courthouse, 219 South Dearborn Street, Chicago, IL 60604. At this hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate. It will also consider whether to approve Plaintiffs' Counsel's request for an award of Attorneys' Fees and Costs, as well as Service Awards to the Class Representatives. If there are objections, the Court will consider them. The Court may listen to people who have asked to speak at the hearing. You or your own lawyer may appear and speak at the hearing at your own expense, but there is no requirement that you or your own lawyer do so. After the hearing, the Court will decide whether to approve the Settlement.

The date or time of the Final Approval Hearing may change. Please check the Settlement Website, [Website URL], for any updates.

## 20. Do I have to come to the Final Approval Hearing?

No. Plaintiffs' Counsel will answer any questions the Court may have. You may attend at your own expense if you wish. If you file an objection, you do not have to come to the Final Approval Hearing to talk about it. If you file your written objection on time, the Court will consider it. You may also pay your own lawyer to attend, but such attendance is not necessary for the Court to consider an objection that was filed on time.

## IF I DO NOTHING

## 21. What happens if I do nothing at all?

If you are a Settlement Class Member and you do nothing, you will give up the rights explained in **Question 9**, including your right to start a lawsuit, continue a lawsuit, or be part of any other lawsuit against the Defendant and the Released Parties about the legal issues resolved by this Settlement. In addition, you will not receive a payment from this Settlement.

## GETTING MORE INFORMATION

| 22. How do I get more information? |
|---|

This Notice summarizes the proposed Settlement. Complete details are provided in the Settlement Agreement. The Settlement Agreement and other related documents are available at the Settlement Website, [Website URL].

If you have additional questions, you may contact the Claims Administrator by email, phone, or mail:

Email: [Email Address]

Toll-Free: 1-XXX-XXX-XXXX

Mail: Suave Antiperspirant Settlement, c/o Claims Administrator, 1650 Arch Street, Suite 2210, Philadelphia, PA 19103

Publicly filed documents can also be obtained by visiting the office of the Clerk of the United States District Court for the Northern District of Illinois or by reviewing the Court's online docket.

***Please do not contact the Court, the Clerk, or the Defendant to inquire about the Settlement.***

**EXHIBIT B2**

From Email Address: <<Email Address>>
From Email Name: Claims Administrator
Subject Line: Notice of Proposed Class Action Settlement – Barnes v Unilever United States Inc.

<<Class Member Name>>
Notice ID: <<Notice ID>>
Confirmation Code: <<Confirmation Code>>

**If you purchased Suave 24-Hour Protection Powder Aerosol Antiperspirant or Suave 24-Hour Protection Fresh Aerosol Antiperspirant between January 1, 2018 and [preliminary approval date], you could receive a payment from a class action settlement.**

*A federal court authorized this Notice. You are not being sued. This is not a solicitation from a lawyer.*

A Settlement has been reached with Unilever United States, Inc. ("Unilever" or "Defendant") in a class action lawsuit about Suave 24-Hour Protection Powder Aerosol Antiperspirant and Suave 24-Hour Protection Fresh Aerosol Antiperspirant (the "Covered Products"), which were subjected to a nationwide recall by the Defendant after an internal review showed slightly elevated levels of benzene in some product samples.

The lawsuit is captioned *Barnes v. Unilever United States Incorporated*, Case No. 1:21-cv-06191, pending in the United States District Court for the Northern District of Illinois. The Defendant denies the Plaintiffs' allegations and all charges of wrongdoing or liability but has agreed to the Settlement to avoid the costs and risks associated with continued litigation.

**What does the Settlement provide?**
The Defendant has agreed to pay two million dollars ($2,000,000) into a Settlement Fund for payment of: (i) Valid Claim Forms for cash benefits submitted by Settlement Class Members; (ii) the notice and other administrative costs incurred by the Claims Administrator; (iii) Attorneys' Fees and Costs, as may be ordered by the Court, and (iv) any Incentive Award to the Class Representatives, not to exceed $1,500 per Class Representative, as may be ordered by the Court.

➢ Settlement Class Members who timely submit a Valid Claim with Proof of Purchase shall receive the purchase price for each Covered Product listed on the Proof of Purchase, inclusive of all taxes.

➢ Settlement Class Members who submit a Valid Claim <u>without</u> Proof of Purchase shall receive the average retail price—$3.29—for up to three (3) Covered Products claimed per household.

➢ Each Settlement Class Member's payment shall be decreased by the amount of cash or voucher payments that member has received or will receive for claims made in the Recall Reimbursement Program (provided that the payment shall not be reduced below $0.00).

**Who is included in the Settlement Class?**

The Settlement Class includes all natural persons who, between January 1, 2018, and the date of Preliminary Approval, purchased in the United States any Covered Product for personal, family or household use, and not resale.

**How do I get a payment from the Settlement?**

To qualify for a settlement payment, you must complete and submit a Claim Form by **DEADLINE DATE**. You may complete and submit a Claim Form online at **[Website URL]** or mail a completed Claim Form to Suave Antiperspirant Settlement, c/o Claims Administrator, 1650 Arch Street, Suite 2210, Philadelphia, PA 19103. Claim Forms are also available by calling 1-**XXX-XXX-XXXX**, or by emailing **[Email Address]**.

**What are my options?**

If you are a Settlement Class Member and do nothing, you will be bound by the Settlement and will give up any right to separately sue any of the Released Parties, including the Defendant, for the claims made in this lawsuit and released by the Settlement Agreement. If you don't want to be legally bound by the Settlement, you must exclude yourself from it by **DEADLINE DATE**. Unless you exclude yourself, you won't be able to sue or continue to sue the Defendant for any claims made in this lawsuit or released by the Settlement. If you stay in the Settlement (*i.e.*, don't exclude yourself), you may object to it or ask for permission for you or your lawyer to appear and speak at the Final Approval Hearing – at your own cost – but you don't have to. Objections and requests to appear are due by **DEADLINE DATE**. Please visit **[WEBSITE URL]** for more information on requesting exclusion from the Settlement or objecting to the Settlement.

**Do I have a Lawyer?**

Yes. The Court has appointed the following law firms to represent the Settlement Class as Plaintiffs' Counsel:

- Levin, Sedran & Berman LLP
- Shub & Johns LLC
- Bursor & Fisher, P.A.
- Milberg Coleman Bryson Phillips Grossman, PLLC
- The Sultzer Law Group

Plaintiffs' Counsel may apply to the Court for an award of their Attorneys' Fees and Costs in a total amount not to exceed six hundred sixty thousand dollars ($660,000.00). They will also ask the Court to approve Service Awards for each of the Class Representatives not to exceed $1,500 each. The Court may award less than these amounts. If approved, these fees, costs and awards will be paid from the Settlement Fund.

**The Court's hearing.**

The Court will hold a Final Approval Hearing at **XX:XX a.m./p.m. (CT) on DATE,** in Courtroom 2103, located at the Everett McKinley Dirksen United States Courthouse, 219 South Dearborn Street, Chicago, IL 60604. At this hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate. It will also consider whether to approve Plaintiffs' Counsel's request for an award of Attorneys' Fees and Costs, as well as Service Awards to the Class Representatives.

If there are objections, the Court will consider them. The Court may listen to people who have asked to speak at the hearing. You or your own lawyer may appear and speak at the hearing at your own expense, but there is no requirement that you or your own lawyer do so. After the hearing, the Court will decide whether to approve the Settlement.

**This notice is only a summary.**
**For more information, including the long form notice and Settlement Agreement, visit ==[Website URL]==, email ==[Email Address]==, or call 1-==XXX-XXX-XXXX==.**

*Unsubscribe*

**EXHIBIT B3**

If you purchased **Suave 24-Hour Aerosol Antiperspirant** products, a class action settlement may affect your rights.

**Click Here To Learn More**

If you purchased

**Suave 24-Hour Aerosol Antiperspirant** products,

a class action settlement may affect your rights.

**Click Here To Learn More**

If you purchased **Suave 24-Hour Aerosol Antiperspirant** products, a class action settlement may affect your rights.

**Click Here To Learn More**

**Angeion Group**

Sponsored · 🌐

Legal Notice: If you purchased Suave 24-Hour Aerosol Antiperspirant products, you may be eligible to receive payment from a class action settlement.



PLACEHOLDER.COM

**Suave 24-Hour Aerosol Antiperspirant Settlement**

Learn more

**Angelon Group**

Sponsored · 🌐

Legal Notice: If you purchased Suave 24-Hour Aerosol Antiperspirant products, you may be eligible to receive payment from a class action settlement.



placeholder.com

**Suave 24-Hour Aerosol Antiperspirant Settlement**

Learn more



**angeion_group**
Sponsored

 

Learn more  ›



angeion_group Legal Notice: If you purchased Suave 24 -Hour Aerosol Antiperspirant products, you may be eligible to receive payment from a class action settlement.